**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**JANE DOE,**

       **Plaintiff,**

   **v.**                                        **Case No. 1:25-cv-00950**


**FASHION INSTITUTE OF TECHNOLOGY,**

       **Defendant.**

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Jane Doe, by her attorneys National Jewish Advocacy Center, Inc., as and for her complaint against Defendant Fashion Institute of Technology ("FIT" or the "University"), respectfully alleges as follows:

<u>**THE NATURE OF THE ACTION**</u>

1.     This action arises out of the egregious miscarriage of justice against Plaintiff, a Jewish student at FIT, through the University's biased misconduct proceedings, which rushed to silence Plaintiff for harmlessly exercising her freedom of expression in opposition to false and defamatory anti-Israel flyers, while turning a blind eye and refusing to take action against the flyer distributors, who have called for violence and destruction of an entire legal state, have called for the genocide of the Jewish people generally, and have specifically threatened Jewish students on FIT's campus, including the Plaintiff specifically. As part of the extreme surge in

acts of antisemitism across the country since the horrific October 7, 2023 attack committed by the Hamas against Israel—which included the murder, rape, and kidnapping of thousands of Israeli citizens—organizations holding themselves out as student organizations have continued to hold unsanctioned pro-Hamas, anti-Israel rallies on FIT's campus, in violation of the University's policies, and to distribute false and defamatory anti-Israel flyers on sidewalks near FIT's buildings. However, FIT has turned a blind eye and has allowed these rallies to continue, and has refused to implement any policy violations against the rally organizers or false and defamatory leafletting.

2.    On February 1, 2024, Plaintiff was off the FIT campus and walking to class at FIT when, in order to remain on the sidewalk, she was forced to pass through a gauntlet of persons handing out false and defamatory anti-Israel flyers. Plaintiff was handed a flyer that contained a QR code to sign a petition that falsely and defamatorily claimed that the Jews of Israel are colonizing land that isn't theirs, engaging in ethnic cleansing and committing genocide in Gaza.

3.    As a harmless expression of her speech, Plaintiff shoved the unsolicited, unwanted and offensive flyer back at the person who handed it to her, inadvertently jostling that person, who stumbled backwards a couple steps.

4.    An FIT student who was also handing out the false and defamatory antisemitic flyers raced after Plaintiff and took her photo, without asking for Plaintiff's consent, and posted it on FIT social media groups.

5.    Plaintiff was then the subject of threatening social media posts, which directly suggested "beating her ass as an example." Those posting stated that if they were present, her "face would be catching a left hook to the jaw." They expressed that they were "pissed off," and attached a photo of a snarling dog with fangs bared. These communications were in fact a

violation of FIT's policies, albeit one that FIT chose not to enforce.

6.    Plaintiff was fearful in the wake of these threatening FIT social media posts, and reached out to FIT for assistance.

7.    Almost instantly, the University rushed to silence Plaintiff and placed her on interim suspension from the University, without adhering, or even referring to, the due process guidelines governing such disciplinary measures.

8.    In contrast, before, during and after February 1, 2024, when Jewish students including Plaintiff sought FIT's help in regard to anti-Israel and anti-Jewish incidents at the same location, FIT summarily dismissed them for lack of jurisdiction.

9.    Indeed, from inception, FIT's investigation and adjudication process was flawed, biased, and deficient. Throughout the university misconduct process, Plaintiff was subject to unfair and discriminatory treatment. Plaintiff was presumed guilty from the start, due to her affiliation with Israel.

10.    As a result of FIT's flawed and biased investigation and adjudication process, Plaintiff was wrongfully found responsible for disruptive behavior and endangerment, and sanctioned to suspension from the University, forever marring her educational file with an improper finding of responsibility and interrupting her studies.

11.    From the outset, Defendant engaged in discriminatory conduct by making biased and pre-determined assumptions regarding Plaintiff's guilt, based solely on her religion and affiliation with Israel. By proceeding to impose an unreasonable sanction, Defendant acted in violation of Title VI of the Civil Rights Act of 1964, as well as applicable New York State and New York City laws, discriminating against Plaintiff based on her religion and national origin.

12.    By violating its own policies and depriving Plaintiff of a fair and impartial

disciplinary process, Defendant breached express and implied agreements with Plaintiff and acted in bad faith to fulfill its promises to her as an enrolled student at FIT.

13.     FIT's failure to condemn, and its tacit endorsement of, the dissemination of antisemitic flyers and related protests and actions, has subjected Jewish students, including the Plaintiff, to isolation and has denied them equal access to educational opportunities at FIT.

14.     Accordingly, Plaintiff brings this action against Defendant FIT for (i) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; (ii) violation of New York Executive Law § 296 et seq.; (iii) violation of New York Civil Rights Law § 40, et seq.; (iv) violation of N.Y.C. Administrative Code § 8-107; (v) breach of contract and (v) deprivation of her liberty and property interest in her education in violation of substantive and procedural due process.

## THE PARTIES

15.     Plaintiff is a natural person and citizen of the United States. She is Jewish, and during the events described herein, was enrolled as a fulltime, tuition-paying, student at FIT.

16.     Defendant FIT is part of the State University of New York system, a partially federally and state funded public university located in New York, New York, where it maintains its principal offices and place of business.

## JURISDICTION AND VENUE

17.     This Court has federal question, diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the constitution and statutes of the United States; (ii) Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000; and (iii) the state law

claims are so closely related to the federal law claims as to form the same case controversy under Article III of the United States Constitution.

18.    This Court has personal jurisdiction over Defendant FIT on the ground that it is conducting business within the State of New York.

19.    Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I.    BACKGROUND

#### FIT's Blatant Disregard for Acts of Antisemitism on Campus

20.    Before and after the Hamas led atrocities against Israeli civilians, including mass rape, savage torture, kidnapping and murders of children and adult civilians, on October 7, 2023, FIT turned a blind eye to growing antisemitism on campus, which has created both a hostile environment for Jewish students and a fertile breeding ground for the antisemitic events alleged herein.

21.    Jewish students at FIT have been subjected to a continuous escalation of hateful rhetoric and threats of harm directed specifically at them since the October 2023 Hamas atrocities.

22.    False and defamatory antisemitic posters and stickers, banners, and flyers have blanketed the school's campus.

23.    Rallies permeated with false and  inflammatory antisemitic rhetoric have taken place on or in close proximity to campus. On November 9, 2023, a member of the Students for

Justice in Palestine ("SJ") FIT chapter, Mr. Jonas King, proudly led chants encouraging a *global intifada* against Jews at an anti-Israel protest - with complete impunity.

24.     Calls for an *intifada* are widely recognized as a call for the extermination of the Jewish people.

25.     At the November 9, 2023 rally, Jewish students were also equated with Nazis and told to "go kill yourselves".

26.     Signs, chants and songs glorified genocidal terrorist attacks against Jews, including "From the River to the Sea, Palestine Will Be Free", "Palestine is Arab and Must Be Liberated from the River to the Sea", "Zionism is Racism", "By Any Means Necessary", and "Long Live the Intifada."

27.     False, defamatory and antisemitic in person and online attacks (*e.g.*, "baby killer!","genocide supporter", "Zio!") have become the norm in the daily existence of Jewish students at FIT.

28.     Many protests and stickers at FIT falsely, defamatorily and antisemitically equate Zionism with Nazism and encourage students to "punch a Zionist".

29.     At this rally, a Jewish student was hit with a sign by a person who was, on information and belief, an FIT student.

30.     Yet, before, during and after the November 9, 2023 rally, FIT told Jewish students who were concerned by the antisemitic chants, posters and threats that FIT was powerless to do anything about the protesters' conduct on the grounds that the protesters' actions took place on "public property" or "off campus" and therefore fell outside of FIT's jurisdiction.

31.     FIT has asserted to concerned Jewish students that public streets in its vicinity, and specifically, 27th Street between 7th and 8th avenue, are outside its authority to control when it comes to anti-Israel FIT students.

32.     Section V.F. of FIT's Code of Conduct ("Code") defines public property as "[p]roperty that is not privately owned that is within the FIT campus (e.g., West 27th Street) or that immediately borders and is accessible from the campus (e.g., West 26th and 28th Streets and the sidewalks on both sides of the streets)." See FIT's Code of Conduct, attached as Exhibit A hereto.

33.     FIT has given itself the authority to regulate online harassment in Section VI.B.ix and VI.B.x of the Code of Conduct.

34.     However, FIT has repeatedly told Jewish students that complaints that they would file with the appropriate FIT administrative bodies, including complaints relating to online harassment and threats of violence targeting Jewish students brave enough to speak up, would be summarily dismissed for lack of jurisdiction.

35.     In the fall semester of 2023, Plaintiff reported to FIT the intolerable antisemitic, false, defamatory and threatening anti-Israel harassment at FIT, how it affected her and the quality of education and asked for FIT's assistance.

36.     On January 30, 2024, Plaintiff reported to FIT a new and concerning SJP flyer seen on the first day of classes in the new semester after break, and complained to FIT that FIT had not handled the harassment properly in the prior semester.

37.     On February 1, 2024, Plaintiff reported to FIT that she was being harassed and doxed.

38.     The harassment and attacks on Jewish students permeated not only FIT's physical campus and its surroundings, but also the virtual realm. Jewish students are mocked and harassed both anonymously and by self-identified FIT students with impunity. For example, one Jewish student of Arab descent who was crying at a November 9, 2023 anti-Israel protest had her photo posted on an FIT student's social media (Instagram) account with the following caption: "White Woman Tears [ . . .] White Woman Tears [. . .] White Woman Tears [. . .] !!! WOMP WOMP"

39.     On February 29, 2024, a large and vocal anti-Israel, antisemitic rally took place on the 27th Street thoroughfare,  at which the crowds engaged in genocidal and antisemitic threats and chants

40.     Upon information and belief, the February 29, 2024 rallying FIT students did not seek permission from FIT for the February 29, 2024 protest, nor did FIT grant permission.

41.     Upon information and belief, FIT did not impose any repercussions or consequences on the FIT students engaged in genocidal and antisemitic threats and chants at unsanctioned rallies.

42.     The November 9, 2023 and February 29, 2024, antisemitic, anti-Israel rallies, as well as subsequent walkouts and anti-Israel demonstrations by FIT students, all took place in the location where Plaintiff expressed her own free speech on February 1, 2024, by shoving away an anti-Israel flyer.

43.     However, FIT officially disclaimed jurisdiction to enforce its own rules against the FIT students participating in these antisemitic rallies and walkouts.

**The February 1, 2024 False and Defamatory, Antisemitic Flyering**

44.     On February 1, 2024, Plaintiff was walking to class at FIT when, in order to remain on the sidewalk, she was forced to pass between a gauntlet of persons handing out false and defamatory anti-Israel propaganda, asking for signatures on their petition. The propaganda piece contained a QR code inviting SUNY students, such as FIT students, to sign a petition that falsely and defamatorily claimed that the Jews of Israel are colonizers that engage in ethnic cleansing and commit genocide in Gaza.

45.     Upon information and belief, at least one of the persons disseminating the false and defamatory propaganda was a professional agitator with no connection to FIT.

46.     Plaintiff shoved the false and defamatory flyer back to the person who handed it to her, inadvertently jostling the person who handed it to her.

47.     Plaintiff's action was a harmless expression of speech to demonstrate discontent with the false, defamatory, antisemitic, anti-Israel message by shoving the flyer back, and nothing further.

**Plaintiff is the Subject of Frightening Threats and "Doxing"**

48.     Another person handing out the false and defamatory antisemitic flyers raced after Plaintiff and took her photo, without asking for Plaintiff's consent, and posted it on FIT social media groups.

49.     Within hours, Plaintiff was the subject of threatening FIT social media posts, which suggested "beating her ass as an example". Those posting stated that if they were present, her "face would be catching a left hook to the jaw". They expressed that they were "pissed off," and attached a photo of a snarling dog with fangs bared.

9

**Plaintiff asks FIT for Protection from Antisemitic Threats**

50.     Plaintiff emailed FIT's Dean McCallum on February 1, 2024 and the following day, expressing increasing concerns for her safety with screenshots of relevant posts and asking for FIT's help.

51.     FIT's first and only response occurred the following day, on February 2, 2024, when Dean McCallum advised Plaintiff that the person who handed Plaintiff the propaganda piece was not an FIT student, that FIT was not otherwise affiliated with the social media outlets on which Plaintiff was threatened, FizzSocial and Instagram, and that Plaintiff was invited to discuss the incident later that day on GoogleMeet with Dean McCallum.

52.     On information and belief, the FIT FizzSocial account requires production of an FIT photo student ID to post on it.

53.     Plaintiff readily agreed, hoping for FIT protection and support.

**FIT Immediately and Without Advance Notice Suspends Plaintiff**

54.     FIT did not give Plaintiff any notice that this February 2, 2024 GoogleMeet was disciplinary in nature or that Plaintiff would face immediate suspension and exclusion from FIT's campus.

55.     At that February 2, 2024 meeting, FIT's Dean McCallum informed Plaintiff that FIT was leveling disciplinary charges against Plaintiff based on allegations made by a non-FIT student, who on information and belief, was a professional anti-Israel agitator, that Plaintiff punched her on February 1, 2024.

56.     In response to the non-FIT student's allegations, Plaintiff explained that any contact she made with the non-FIT student was accidental, as Plaintiff was merely expressing her right to free speech by harmlessly shoving away the antisemitic propaganda piece.

57.     During this February 2 GoogleMeet, FIT's Dean McCallum informed Plaintiff that FIT was suspending her from class on an interim basis effectively immediately.

58.     Several hours after FIT's Dean McCallum orally delivered FIT's decision to suspend Plaintiff in the GoogleMeet call, FIT's Dean McCallum summarized in writing FIT's charges against Plaintiff, including that Plaintiff was charged with violation of Sections VI.B.i (Physical Abuse) and VI.B.viii (Disruption) of the Code.

59.     FIT did not give Plaintiff the opportunity to petition for an immediate review of the executive suspension despite the Code explicitly providing for that procedure.

60.     The University issued the interim suspension despite the fact that Plaintiff was an upstanding, award-winning student with an excellent GPA, and had never before been in any disciplinary trouble, inside or outside of FIT.

**February 29, 2024 FIT Hearing**

61.     On February 29, 2024, the University held a hearing on the non-FIT student's February 1, 2024 allegations against Plaintiff.

62.     FIT required Plaintiff to appear in person at the hearing but did not require the non-FIT student to testify in person at the hearing.

63.     Rather, FIT allowed the non-FIT student to testify virtually.

64.     Accordingly, Plaintiff was deprived of her due process right to fully confront the witness against her.

65.     At the hearing, FIT did not cross-examine the non-FIT student about her conflicting statements. She testified that she did not live in New York, yet she signed the petition she was collecting signatures for on February 1 as "community member, Fashion Institute of Technology."

66.    During the FIT hearing, a loud anti-Israel rally was staged on the very street where the hearing took place.

67.    FIT's charges against Plaintiff (and its subsequent findings) rely on certain statements of SJP FIT member Jonas King. However, no witness statement was provided to Plaintiff as part of the hearing packet.

68.    Upon information and belief, Mr. King refused to provide a written statement to FIT as part of the process.

69.    Being unable to confront or counter Mr. King's statements, Plaintiff was deprived of due process.

70.    FIT's reliance on Mr. King's statements was therefore improper and in violation of Plaintiff's procedural and substantive due process rights, as she was unable to confront him as a witness and probe his partiality, credibility and character.

71.    FIT permitted the sole in-person witness at the hearing against Plaintiff, another FIT SJP member, to appear with a bottle adorned with a false and defamatory anti-Israel statement.

72.    The FIT SJP witness initially testified that he was not sure what happened on February 1st between Plaintiff and the non-FIT student, and then changed his testimony to state that he saw Plaintiff assault the non-FIT student.

**FIT Suspends Plaintiff for 7 Months**

73.    On March 6, 2024, FIT sent Plaintiff a Decision Letter which found Plaintiff responsible for (i) disruptive behavior; and (ii) physical abuse.  FIT rejected Plaintiff's testimony that any physical contact she had with the non-FIT student was accidental as she was shoving the flyer back, and instead sided with the non-FIT student.

74.    FIT sanctioned Plaintiff with a seven-month suspension from the University until Fall 2024, thereby disrupting her studies and impacting her anticipated completion of the required coursework for her degree.

**Plaintiff Appeals FIT's Draconian Suspension**

75.    On March 13, 2024, Plaintiff timely submitted an appeal of the Decision and Sanction, citing (i) numerous procedural violations, including the failure to give Plaintiff an opportunity to immediately appeal FIT's February 2, 2024 interim suspension; (ii) the disparate treatment of Jewish and non-Jewish FIT students;  (iii) that the disruption charge on its face did not apply to the events of February 1, 2024, because there was no allegation that there was any disruption of college activities, and (iv) FIT failed to honor its contractual promise of a commitment to restorative justice practices set forth in its Code of Conduct.

**FIT Upholds Its Draconian Suspension of Plaintiff for 7 Months**

76.    On March 26, 2024, FIT denied Plaintiff's appeal in its entirety.

**II.    AGREEMENTS,  REPRESENTATIONS,  COVENANTS  &  WARRANTIES BETWEEN PLAINTIFF AND DEFENDANT FIT**

77.    FIT University could have easily addressed the hostile environment for Jewish students on campus simply by properly and fairly enforcing its own Policies.

78.    Indeed, FIT has several policies that promise to protect students, including Plaintiff, from harassment, discrimination, and the fear of violence.

79.    These Policies are in its Code of Conduct, attached hereto as Exhibit A.

80.    The Policies represent a contract between students and the University, and in particular, between Plaintiff and FIT.

81.    Despite knowledge of the antisemitic, anti-Israel activities and threats to Jewish students on campus through, *inter alia*, student complaints, postings around the school, media

articles, and student postings on social media, FIT has failed to enforce its Policies to protect Plaintiff and other Jewish students from the antisemitic conduct described above.

82.    FIT's failure to enforce the Policies before, during, and after Plaintiff's student conduct process has resulted in continued harassment of and discrimination against Plaintiff and other Jewish and/or Israeli students, and has created a hostile environment which deprives said students from educational opportunities at FIT.

83.    As set forth herein, FIT breached its own Code of Conduct by permitting discrimination and harassment of Jewish students, including Plaintiff, in violation of Title VI, and by failing to enforce any policy violation against the anti-Israel protestors.

84.    Further, as set forth herein, FIT engaged in disparate treatment of Plaintiff by treating her, as a Jewish student, differently from similarly situated students, and harshly enforcing alleged policy violations against Plaintiff, while not doing so for the students that engaged in antisemitic, threatening anti-Israel rallies and flyering in violation of the University's Policies.

85.    FIT breached its Code of Conduct by failing to afford Plaintiff the same freedom of expression as anti-Israel protestors and propagandists, and instead, sanctioning Plaintiff for her pro-Israel, anti-hate expression.

## III.    PLAINTIFF'S DAMAGES

86.    As a direct and proximate result of Defendant's biased, unlawful, and improper conduct, Plaintiff was wrongly found responsible for partaking in disruptive behavior and physical abuse, and such a finding has been made part of Plaintiff's educational records. Further, Plaintiff's expected graduation date has been severely delayed. These notations will forever mar Plaintiff's records

87.     Due to Defendant's biased, unlawful, and improper conduct, Plaintiff was subjected to an unfair, biased, improper investigation and adjudication which destroyed Plaintiff's reputation and will permanently impact and derail her future.

88.     Due to Defendant's biased, unlawful, and improper conduct, Plaintiff's academic file is now marred by an improper and baseless finding of violence, which will forever be noted on Plaintiff's transcript.

89.     Due to Defendant's biased, unlawful, and improper conduct, Plaintiff has suffered and will continue to suffer ridicule, reputational damage, emotional distress, economic losses, and damages to her future educational and career prospects.

90.     Due to Defendant's biased, unlawful, and improper conduct, Plaintiff has been subjected to further harassment and a hostile environment.

## AS AND FOR A FIRST CAUSE OF ACTION
### Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*

91.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

92.     Title VI of the Civil Rights Act of 1964 (Title VI) prohibits discrimination on the basis of race, color, or national origin. National origin discrimination includes discrimination against those who identify as or are perceived to be Jewish as well as those who identify with Israel as their ancestral homeland.

93.     The U.S. Department of Education Office of Civil Rights ("OCR") has confirmed that "Title VI protects all students, including students who are or are perceived to be Jewish, from discrimination based on race, color, or national origin." Consistent with this interpretation, the OCR has demanded that federally funded schools "take immediate and

appropriate action to respond to harassment that creates a hostile environment."

94.     "The U.S. National Strategy to Counter Antisemitism" that President Biden issued likewise directed the OCR to remind schools of "their legal obligation under Title VI of the Civil Rights Act of 1964 to address complaints of discrimination, including harassment based on race, color, or national origin, including shared ancestry, such as Jewish ancestry, and ethnic characteristics." *See The U.S. National Strategy to Counter Antisemitism,* The White House    (May    2023),    available    at    https://www.whitehouse.gov/wp-content/uploads/2023/05/U.S.-National-Strategy-to-Counter-Antisemitism.pdf

95.     On December 9, 2023, New York Governor Kathy Hochul issued a letter to the Presidents of Universities in New York, stating:

> [F]ailure to address such [antisemitic] activity would constitute a violation of New York State Human Rights Law as well as Title VI of the Civil Rights Act of 1964. Under Title VI, any recipient of federal funds is responsible for keeping students free from a hostile environment based upon their ethnicity or national origin - a standard that that has been applied to antisemitism . . . I assure you that if any school in New
> York State is found to be in violation, I will activate the State's Division of Human Rights to take aggressive enforcement action and will refer possible Title VI violations to the federal government.

*See Letter from New York Governor Kathy Hochul to New York State Coll. and Univ. Presidents (Dec. 9,2023),* available at https://www.governor.ny.gov/sites/default/files/2023-12/SchoolsV2.pdf.

96.     FIT receives federal financial assistance and is subject to the requirements of Title VI.

97.     Plaintiff is a Jewish student, and her affinity with Israel is part of her identity.

98.     FIT's intentional discrimination against Plaintiff created a hostile environment for Plaintiff as a Jewish student by immediately suspending Plaintiff before collecting relevant evidence, failing to protect or support Plaintiff in the face of public threats made, on information and belief, by other FIT students, which put Plaintiff's safety in danger. Furthermore, in not

responding to the doxing of Plaintiff (a Jewish American) by FIT students, FIT showed a clear indifference to Plaintiff, despite the University's Policies.

99.   FIT intentionally discriminated against Plaintiff as a Jewish student by subjecting Plaintiff to discipline for expressing her discontent with the false and defamatory antisemitic, anti-Israel message in flyer distributions on the sidewalks leading to FIT's buildings, while not sanctioning *one single student* involved with the organization or participation in the unsanctioned flyer distribution —which included a petition calling for the total destruction of the one and only Jewish state in the world.

100.   FIT's deliberate indifference created a hostile environment for Plaintiff as a Jewish student, in violation of Title VI. FIT's deliberate indifference further deprived Plaintiff of the full benefit of educational opportunities at the University based on her national origin—a Jewish student who identifies Israel as her ancestral homeland.

101.   FIT acted with deliberate indifference when it ignored months of antisemitic acts on campus before and after the October 7 attack on Israel. Its failure to address these acts effectively condoned the antisemitic leafleting on February 1 and the safety threats Plaintiff received, which FIT also failed to address.

102.   FIT had actual notice of severe and pervasive harassment against Jewish students on campus. On information and belief, an unrelated complaint was filed against FIT with the OCR detailing other unrelated acts of antisemitism that FIT has allowed to go unchallenged, and Plaintiff hereby incorporates those allegations by reference herein.

103.   FIT possessed enough knowledge of the harassment that it reasonably should have implemented deterrence measures before, and on the day of, the February 1st antisemitic leafleting and in its aftermath, in response to flagrant violations of University Policies and

threats to Plaintiff's safety.

104.   FIT's decision to sanction only Plaintiff, while allowing the leafleters to go unsanctioned, is just one example of its severe and pervasive harassment and bias against her. As a result, Plaintiff has missed classes, sought counseling, and felt compelled to disguise herself with a hat, sunglasses, and different clothing when near the FIT campus due to concerns for her safety."

105.   The harassment of Plaintiff, and bias against Plaintiff, by FIT choosing to *only* sanction Plaintiff and none of the unsanctioned leafleters, is so severe and pervasive, that it has caused Plaintiff to, *inter alia*, miss classes, seek counseling support, and disguise herself with a hat, sunglasses and different attire when near the FIT campus, for fear of her safety.

106.   FIT's deliberate indifference to the harassment against Jewish students is pervasive. FIT did not implement any deterrence measures after being on notice of potentially dangerous conditions on campus, nor did it take sufficient measures to resolve the harassment and discrimination against Plaintiff. Instead, FIT's actions in sanctioning Plaintiff were the direct result of the implicit and explicit bias held by FIT and its administration against Jewish and/or Zionist students. By way of example, and not limitation: Prior to the February 1 leafleting, FIT did not take action to prevent acts of antisemitism on campus, in blatant violation of University policies. On information and belief, FIT did not timely investigate *or take interim action* against violators of the School's Code of Conduct to deter further acts of antisemitism or otherwise denounce the conduct. In contrast, the University took swift action to investigate, interim suspend, and sanction Plaintiff for expressing her views against false, defamatory and antisemitic, anti-Israel flyers which called for violence against Israel, by shoving the flyer back at the person who gave it to her.

107.   Prior to the February 1 leafleting, FIT was well aware that SJP FIT was holding unsanctioned anti-Israel demonstrations on campus, and distributing false and defamatory, antisemitic, anti-Israel leaflets, in direct violation of University Policies. In response, FIT did not discipline the organizers of these unsanctioned rallies and flyer distributions. In contrast, Plaintiff was immediately sanctioned through suspension by the University for simply pushing a flyer back at its distributor to express her views.

108.   On information and belief, since the October 7 attack, FIT did nothing to condemn or disperse the unsanctioned rallies held on campus, where protestors chanted antisemitic, anti-Israel, violent, genocidal threats at and about Jewish and/or Israeli students, including Plaintiff. Instead, FIT merely affirmed the students' freedom of expression. In contrast, when Plaintiff exercised her freedom of expression in support of Israel, she was immediately suspended.

109.   On information and belief, FIT has not taken any disciplinary action against the organizers of the antisemitic, anti-Israel rallies or February 1 leafleting. FIT's deliberate indifference has fostered an increasingly pervasive hostile educational environment for its pro-Israel students, including Plaintiff.

110.   Through its continued deliberate indifference before, during, and after the October 7 attack on Israel, FIT has facilitated further antisemitism and anti-Israel harassment of Jewish students, including Plaintiff, by, inter alia, promoting and/or not condemning antisemitic, anti-Israel actions and speech on campus, as well as not taking sufficient action to deter or prevent such harassment.

111.   FIT's ongoing disparate treatment of Plaintiff on the basis of national origin has contributed to a hostile environment on campus that has injured Plaintiff and left Plaintiff vulnerable to further harassment, including the biased disciplinary proceedings which Plaintiff

was forced to undergo.

112. As a direct and proximate result of FIT's actions and inactions in violation of Title VI, Plaintiff has sustained substantial injury, damage, and loss, including, but not limited to: emotional distress, psychological damages, loss of education, loss of future educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

113. Accordingly, Plaintiff is entitled to all relief available under Title VI, including damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante.

## AS AND FOR A SECOND CAUSE OF ACTION
### Violation of New York Executive Law § 296 *et seq.*

114. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

115. Plaintiff is entitled to an educational environment that is free from harassment and discrimination. The New York State Human Rights Law ("NYSHRL") prohibits an educational institution from permitting the harassment of any student on the basis of the student's actual or perceived religion or national origin

116.    Plaintiff identifies as Jewish, and identifies Israel as her ancestral homeland, which is intrinsic to her identity. Plaintiff is protected by the NYSHRL.

117.    FIT's actions, inactions, negligence, and/or deliberate indifference to the antisemitic, anti-Israel harassment of Plaintiff on the basis of her religion and national origin has violated the protections owed to Plaintiff under the NYSHRL. FIT's actions, inactions, negligence, and/or deliberate indifference have enabled the harassment of Plaintiff and her fellow Jewish students to continue on campus.

118.    FIT has failed to implement deterrence measures to protect Plaintiff, and other Jewish students, from harassment on campus.

119.    FIT has not taken any measures to remediate any such harassment and discrimination; it has failed to conduct timely investigations into the harassing conduct and has failed to discipline those responsible for the harassment. Furthermore, FIT has used all available remedies at its disposal to swiftly take action against Plaintiff, for expressing her pro-Israel views.

120.    FIT's actions, inactions, negligence, and/or deliberate indifference have facilitated the ongoing harassment of Plaintiff and other Jewish students in violation of FIT's statutory obligations under the NYSHRL

121.    FIT's violations have deprived Plaintiff of the full benefits and use of FIT's educational programs and facilities. Plaintiff has been denied the use of campus spaces on the basis of her religion and national origin out of fear for her safety, and, in particular, due to the suspension implemented by FIT against Plaintiff due to Plaintiff's expression of her pro- Israel views.

122.    As a direct and proximate result of FIT's actions and inactions in violation of the

NYSHRL, Plaintiff has sustained substantial injury, damage, and loss, including, but not limited to: emotional distress, psychological damages, loss of education, loss of future educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

123.    Accordingly, Plaintiff is entitled to all relief available under the NYSHRL, including damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante.

## AS AND FOR A THIRD CAUSE OF ACTION
### Violation of New York Civil Rights Law § 40, *et seq.*

124.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

125.    New York Civil Rights law entitles all persons to be protected from discrimination on the basis of national origin in any of their civil rights by any other person, corporation, or institution, or by the state.

126.    N.Y. Exec. Law § 291 recognizes the "opportunity to obtain education" and "the use of places of public accommodation" "without discrimination because of … national origin"

as civil rights.

127.    FIT is a place of public accommodation by operation of N.Y. Civ. Rights Law §

40.

128.    FIT has violated Plaintiff's civil rights by subjecting Plaintiff to on-campus

discrimination on the basis of her identity as a Jewish student who identifies Israel as her

ancestral homeland. FIT's actions, inactions, negligence, and/or deliberate indifference to the

hostile campus environment and its failure to protect Plaintiff from discrimination and

harassment through its ineffective deterrence and inadequate remedial measures have harmed

Plaintiff's opportunities to obtain education and her unencumbered use of all campus facilities.

129.    As a direct and proximate result of FIT's actions and inactions in violation of the

NY Civil Rights Law, Plaintiff has sustained substantial injury, damage, and loss, including, but

not limited to: emotional distress, psychological damages, loss of education, loss of future

educational and career opportunities, reputational damages, economic injuries and other direct

and consequential damages.

130.    Accordingly, Plaintiff is entitled to all relief available under the NY Civil Rights

Law, including damages in an amount to be determined at trial, plus prejudgment interest,

attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to:

(i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's

disciplinary record with respect to the allegations described hereinabove; (iii) remove any record

of the finding and/or Plaintiff's suspension from her educational file/disciplinary

records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's

disciplinary record may have been disclosed; and (v) any and all further actions required to return

Plaintiff to the status quo ante.

131.    Per N.Y. Civ. Rights Law § 40-d, Plaintiff will serve notice of this complaint upon the New York State Attorney General.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Violation of N.Y.C. Admin. Code § 8-107

132.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

133.    The New York City Human Rights Law ("NYCHRL") prohibits an agent or employee of any place or provider of public accommodation from directly or indirectly refusing, withholding from, or denying any person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation because of such person's actual or perceived national origin.

134.    FIT's actions, inactions, negligence, and/or deliberate indifference in violation of the NYCHRL have been the actual, direct, and proximate causes of Plaintiff's injuries.

135.    As a direct and proximate result of FIT's actions and inactions in violation of N.Y.C. Admin. Code § 8-107, Plaintiff has sustained substantial injury, damage, and loss, including, but not limited to: emotional distress, psychological damages, loss of education, loss of future educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

136.    Accordingly, Plaintiff is entitled to all relief available under N.Y.C. Admin. Code § 8-107, including damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge

24

Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante.

137.     Pursuant to NYCHRL § 8-502, Plaintiff will serve notice of this complaint upon the City Commission on Human Rights and the Corporation Counsel.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Breach of Contract

138.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

139.     At all relevant times hereto, a contractual relationship existed between FIT and Plaintiff by virtue of Plaintiff's enrollment at FIT and as defined by and through FIT's policies and procedures governing the student disciplinary system.

140.     Through the documents it publishes and provides to students, FIT makes express and implied contractual commitments to students involved in the disciplinary process and/or the investigation of potential violations of Policies.

141.     New York law recognizes that the relationship between a student and a college is contractual in nature, and that the terms of the college's policies and student handbook become part of that contract.

142.     Implied in every contract is the covenant of good faith and fair dealing.

143.     Based on the aforementioned facts and circumstances, FIT created express and implied contracts when it offered, and Plaintiff accepted, admission to FIT, and when Plaintiff paid the required tuition and fees.

144.    Plaintiff has complied with her contractual obligations.

145.    FIT, however, has breached its contractual obligations to Plaintiff.

146.    As detailed above, FIT breached its contractual promises with respect to the safety, well-being, and fair treatment of its student population. FIT's Policies include specific and concrete promises to maintain a campus that is free and clear of harassment.

147.    FIT breached its express and implied contracts with Plaintiff by failing to enforce the commitments reflected in its Policies to provide Plaintiff a campus free from discrimination and harassment.

148.    Before, during and after and the February 1, 2024 false and defamatory, discriminatory, antisemitic leafletting, FIT breached its contractual obligations to Plaintiff by failing to take action against the organizers and attendees of unauthorized, anti-Israel rallies, which encouraged violence, leveled threats at Jews, and chanted genocidal slogans.

149.    FIT further breached its contractual obligations to Plaintiff by failing to afford her the same freedom of expression as granted to the students who partook in the unauthorized rally. Indeed, when Plaintiff exercised her freedom of expression by shoving the antisemitic flyer away, she was immediately suspended. In contrast, neither the students involved in the antisemitic rallies, nor the students who made threatening antisemitic posts, nor the students who occupied the sidewalk leading to the FIT buildings handing out the antisemitic flyers, nor the students who doxed Plaintiff, have been sanctioned.

150.    FIT breached its contractual obligations to Plaintiff to provide a campus free from discrimination by treating Plaintiff, a Jewish student, differently from others on campus— Plaintiff was subjected to a swift disciplinary process and a sanction of suspension, while students who expressed their anti-Israel views were not sanctioned by FIT.

151.    FIT breached its contractual obligations to Plaintiff by failing to remedy the harassment Plaintiff was experiencing on campus, including students targeting Plaintiff with threatening social media posts. FIT's failure to take action against this harassment put Plaintiff's safety in grave danger.

152.    Throughout the investigation and adjudication of the allegations against Plaintiff, the University breached its contractual obligations to Plaintiff by: (i) failing to notify Plaintiff of her right to an immediate review of FIT's interim suspension of her; (ii) failing to grant Plaintiff an immediate review of FIT's interim suspension; (iii) failing to properly apply the preponderance of the evidence standard because, among other things, there was no credible evidence that Plaintiff deliberately assaulted the non-FIT student; and (iv) failing to properly consider relevant factors when implementing Plaintiff's interim suspension and sanction, including her spotless disciplinary record up until the events described herein.

153.    FIT has also breached the implied covenant of good faith and fair dealing through its failure to enforce its Policies in a fair, unbiased manner.

154.    As a proximate and foreseeable consequence of the foregoing breaches, Plaintiff sustained damages, including, but not limited to, emotional distress, psychological damages, loss of education, loss of future educational and career opportunities, reputational damages, economic injuries, and other direct and consequential damages.

155.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Violation of Due Process

156.    Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

157.    Defendant, FIT, is a public university and instrumentality of the State of New York. As such, its actions are subject to the Fourteenth Amendment to the United States Constitution.

158.    On or about February 2, 2024, Defendant notified Plaintiff for the first time that she was suspended immediately. The lack of timely and adequate notice deprived Plaintiff of the opportunity to understand the claims against her, gather evidence, and prepare a meaningful response.

159.    Defendant's actions of failing to provide timely and specific notice violated Plaintiff's procedural due process rights as guaranteed under the Fourteenth Amendment to the United States Constitution.

160.    Plaintiff has a substantial liberty and property interest in her education.

161.    Those interests were at stake during the investigation, and Defendant's actions directly infringed upon those interests without providing constitutionally mandated due process.

162.    As a direct and proximate result of Defendant's actions, Plaintiff suffered harm, including but not limited to emotional distress.

163.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Retaliation

164.    Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

165.    In the fall semester of 2023, Plaintiff reported to FIT the intolerable antisemitic, false, defamatory and threatening anti-Israel harassment at FIT, how it affected her and the quality of education and asked for FIT's assistance.

166.    On January 30, 2024, Plaintiff reported to FIT a new and concerning SJP flyer seen on the first day of classes in the new semester after break, and complained to FIT that FIT had not handled the harassment properly in the prior semester.

167.    On February 1, 2024, Plaintiff reported to FIT that she was being harassed and doxed.

168.    On February 2, 2024, FIT retaliated against Plaintiff for her complaints by suspending her without notice after Plaintiff engaged in a harmless expression of speech to demonstrate discontent with the false, defamatory, antisemitic, anti-Israel message of a flyer offered to her by shoving the flyer back to the non-student who offered it to her.

169.    As a proximate and foreseeable consequence of the foregoing retaliation, Plaintiff sustained damages, including, but not limited to, emotional distress, psychological damages, loss of education, loss of future educational and career opportunities, reputational damages, economic injuries, and other direct and consequential damages.

170.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against

Defendant FIT as follows:

i.    On the first cause of action for Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante.

ii.    On the second cause of action for Violation of New York Executive Law § 296 *et seq*., a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante.

iii.    On the third cause of action for Violation of New York Civil Rights Law § 40, *et seq*., a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante.

iv.    On the fourth cause of action for Violation of N.Y.C. Admin. Code § 8-107, a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the

outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante

v. On the fifth cause for breach of contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

vi. On the sixth cause for violation of due process, a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

vii. On the seventh cause of action for retaliation, a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing FIT to: (i) reverse the outcome, findings, and sanction described hereinabove; (ii) expunge Plaintiff's disciplinary record with respect to the allegations described hereinabove; (iii) remove any record of the finding and/or Plaintiff's suspension from her educational file/disciplinary records/transcript; (iv) issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed; and (v) any and all further actions required to return Plaintiff to the status quo ante, and

viii. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

[THIS SECTION IS INTENTIONALLY LEFT BLANK]

January 31, 2024

Respectfully submitted,

National Jewish Advocacy Center, Inc.
*Attorneys for Plaintiff*

By: _____ */s/ Abra Siegel* _____
Abra Siegel
666 Harless Place
West Hempstead, NY 11552
(312) 487-1281
abra@njaclaw.org

By: _____ */s/ Lauren Israelovitch* _____
Lauren Israelovitch
666 Harless Place
West Hempstead, NY 11552
(914) 222-3828
lauren@njaclaw.org