UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                Plaintiff,

     v.

FASHION INSTITUTE OF TECHNOLOGY,

                Defendant.

Case No.: 1:25-cv-00950

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FASHION INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS

---

# BOND, SCHOENECK & KING, PLLC

By:    Rebecca K. Kimura, Esq.
        Christopher Cruz-Sierra, Esq.
        *Attorneys for the Fashion Institute of Technology*
        600 Third Avenue, 22nd Floor
        New York, New York 10016-1915
        Email address:  rkimura@bsk.com
        Telephone:  646-253-2309

Dated:  May 23, 2025

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT FACTUAL ALLEGATIONS ................................................ 3

ARGUMENT ......................................................................................... 6

    STANDARD ON MOTION TO DISMISS ........................................... 6

    POINT I ........................................................................................... 7

        PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY CAN ONLY BE BROUGHT IN AN ARTICLE 78 PROCEEDING, WHICH IS NOW UNTIMELY .......... 7

    POINT II .......................................................................................... 11

        PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VI FOR DISCRIMINATION OR HARASSMENT .................................................... 11

    POINT III ........................................................................................ 14

        PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NYSHRL, THE NYCRL OR THE NYCHRL FOR DISCRIMINATION OR HARASSMENT ..................... 14

    POINT IV ........................................................................................ 15

        PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................. 15

    POINT V ......................................................................................... 18

        PLAINTIFF FAILS TO STATE A CLAIM FOR DUE PROCESS UNDER § 1983.......... 18

    POINT VI ........................................................................................ 20

        PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION ................... 20

    POINT VII ....................................................................................... 21

        PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ................................ 21

CONCLUSION .................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Blick Art Materials, LLC*,
   268 F. Supp. 3d 381 (E.D.N.Y. 2017) ...................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................6

*Askin v. Dept. of Educ. of City of New York*,
   110 A.D.3d 621 (1st Dept. 2013) .........................................................................................15

*Assoko v. City of New York*,
   539 F. Supp. 2d 728 (S.D.N.Y. 2008) ..................................................................................13

*Attallah v. N.Y. College of Osteopathic Med.*,
   94 F. Supp. 3d 448 (E.D.N.Y 2015), *aff'd.*, 643 F. App'x 7 (2d Cir. 2016) ..........................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................6, 7

*Brightman v. Prison Health Serv., Inc.*,
   108 A.D.3d 739 (2d Dept. 2013) .........................................................................................20

*Brown v. N.Y.U.*,
   2020 N.Y. Misc. LEXIS 24279 (Sup. Ct., Richmond Cty., March 31, 2020)............22, 23, 24

*Burgess v. New Sch. Univ.*,
   23-CV-4944 (JGK), 2024 U.S. Dist. LEXIS 163306 (S.D.N.Y. Sept. 11, 2024)...................14

*Campo v. New York City Employees' Ret. Sys.*,
   843 F.2d 96 (2d Cir. 1988)..................................................................................................11

*Chai v. N.Y.U.*,
   1:23-CV-09192-MKV, 2024 U.S. Dist. LEXIS 160094 (S.D.N.Y. Sept. 4, 2024).............9, 22

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..................................................................................................7

*Cruz v. Seiu Local 32BJ*,
   19 Civ. 11836, 2021 U.S. Dist. LEXIS 152074 (S.D.N.Y. Aug. 12, 2021) ...........................20

*Ctr. for Bio-Ethical Reform, Inc. v. Black*,
   234 F. Supp. 3d 423 (W.D.N.Y. 2017)..................................................................................12

*Delgado v. Triborough Bridge & Tunnel Auth.*,
   485 F.Supp.2d 453 (S.D.N.Y. 2007).....................................................................................21

*Doe v. Columbia Univ.*,
   No. 19-Civ-5357 (ER), 2020 U.S. Dist. LEXIS 56233, *8 (S.D.N.Y. March 31, 2021) ........10

*Doe v. Syracuse Univ.*,
   5:21-CV-977, 2024 U.S. Dist. LEXIS 137790 (N.D.N.Y. Aug. 2, 2024) ..............................22

*Duffy v. City of New York*,
   452317/2020, 2021 WL 4076944 (Sup. Ct., N.Y. Cty. 2021) ...................................................9

*Dwyer v. Regan*,
   777 F.2d 825 (2d Cir. 1985).....................................................................................................19

*Edwards v. Sequoia Fund, Inc.*,
   938 F.3d 8 (2d Cir. 2019)..........................................................................................................16

*Eldars v. State Univ. of N.Y.*,
   2021 U.S. App. LEXIS 30213 (2d Cir. Oct. 8, 2021).............................................................19

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...................................................................................12

*United States ex rel. Foreman v. AECOM*,
   19 F.4th 85 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022)............................................7

*Foster v. City of New York*,
   157 A.D.2d 516 (1st Dept. 1990)................................................................................................7

*Francis v. Kings Park Manor, Inc.*,
   992 F.3d 67 (2d Cir. 2021) .......................................................................................................22

*Friedman v. Maspeth Federal Loan and Sav. Ass'n*,
   30 F. Supp. 3d 183 (E.D.N.Y. 2014) ........................................................................................18

*Gay v. Carlson*,
   60 F.3d 83 (2d Cir. 1995)..........................................................................................................24

*Harris v. City of New York*,
   186 F.3d 243 (2d. Cir 1999)......................................................................................................10

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009).....................................................................................................6, 7

*Hayut v. State Univ. of N.Y.*,
   352 F.3d 733 (2d Cir. 2003)......................................................................................................12

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
   101 F.3d 877 (2d Cir. 1996) ......................................................................................................19

iv

*Howell v. New York Post Co.*,
    81 N.Y.2d 115 (1993) ........................................................................................................23

*Jennings v. Teachers College*,
    29 Misc. 3d 1236(A) (Sup. Ct., N.Y. Cty., Nov. 8, 2010) ...........................................8

*Kickertz v. N.Y.U.*,
    110 A.D.3d 268 (1st Dept. 2013)...................................................................................8

*Kreiss v. McCown DeLeeuw & Co.*,
    37 F. Supp. 2d 294 (S.D.N.Y. 1999).............................................................................16

*Landau v. Corp. of Haverford Coll.*,
    24 Civ. 2044 (GAM), 2025 WL 35469 (E.D. Pa. Jan. 6, 2025) ..............................12

*Liu Jo S.P.A. v. Jenner*,
    630 F. Supp. 3d 501 (S.D.N.Y. 2022)...........................................................................18

*Maas v. Cornell University*,
    94 N.Y.2d 87 (1999) ......................................................................................................10

*Marbury v. Pace Univ. (In re Columbia Tuition Refund Action)*,
    532 F. Supp. 3d 414 (S.D.N.Y. 2021)...........................................................................16

*McKenzie v. Meridian Capital Group, LLC*,
    35 A.D.3d 676 (2d Dept. 2006) ....................................................................................15

*Metrosearch Recoveries, LLC v. City of New York*,
    No. 158027/2016, 2017 WL 4354790 (N.Y. Sup Ct. Oct. 2, 2017) ...........................4

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2012)....................................................................................14, 15

*Mirza v. College of Mount St. Vincent*,
    Index No.: 805075/2024E, 2025 N.Y. Misc. LEXIS 1605 (Sup. Ct., Bronx Cty. March 18,
    2025)
    ...........................................................................................................................................9

*Mortise v. United States*,
    102 F.3d 693 (2d Cir. 1996).........................................................................................22

*Nespoli v. Bd. of Trustees of the New York City Employees' Retirement System*,
    2021 N.Y. Slip. Op. 31603(U) (Sup. Ct., N.Y. Cty. 2017).........................................7

*Novio v. N.Y. Acad. of Art*,
    317 F. Supp. 3d 803 (S.D.N.Y. 2018)...........................................................................17

*Nungesser v. Columbia Univ.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016) ................................................................16

*Padiyar v. Albert Einstein Coll. of Medicine of Yeshiva Univ.*,
73 A.D.3d 634 (1st Dept. 2010) ..........................................................................9

*Padmanabhan v. N.Y. Inst. of Tech.*,
18 Civ. 5284 (ER), 2019 U.S. Dist. LEXIS 162261 (S.D.N.Y. Sept. 20, 2019) ...................20

*Papelino v. Albany Coll. Of Pharmacy of Union Univ.*,
633 F.3d 81 (2d Cir. 2011) .................................................................................16

*Rhee-Karn v. Lask*,
15 Civ. 9946 (LAP), 2018 U.S. Dist. LEXIS 171319 (S.D.N.Y. Sept. 30, 2018) ...............23

*Rodriguez v. Maricopa County Community College Dist.*,
605 F.3d 703 (9th Cir. 2009) .............................................................................12

*Smalls v. New York City Employees' Ret. Sys. Nycers*,
2020 U.S. Dist. LEXIS 168694 (S.D.N.Y. Sept. 15, 2020) ....................................11

*In re Susan M. v. New York Law School*,
16 N.Y.2d 241 (1990) ........................................................................................10

*Szewczyk v. Saakian*,
774 F. App'x 37 (2d Cir. 2019) ..........................................................................14

*Ward v. N.Y.U.*,
No. 99 Civ. 8733 (RCC), 2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sept. 28, 2000) ............17

*Zeno v. Pine Plains Cent. Sch. Dist.*,
702 F.3d 655 (2d Cir. 2012) ...............................................................................11

*Zherka v. Ramos*,
173 A.D.3d 746 (2d Dept. 2019) ........................................................................10

**Statutes**

42 U.S.C. § 1983 ....................................................................................... 2, 18, 19

Federal Rule of Civil Procedure Rule 12(b)(6) .............................................. 1, 6, 7, 11

New York City Administrative Code § 8-107 ............................................ 2, 14, 15, 20

New York Civil Practice Law and Rules § 217 .......................................... 1, 6, 10, 11

New York Civil Practice Law and Rules Article 78 ........................................... *passim*

New York Civil Rights Law § 40, et seq. ................................................... 2, 14, 15

New York Executive Law § 286, et seq. ......................................................2, 14, 15, 20

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. .................................. *passim*

**Other Authorities**

First Amendment of the U.S. Constitution ...............................................................12

Fourteenth Amendment of the U.S. Constitution  .......................................................19

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Defendant Fashion Institute of Technology ("Defendant" or "FIT") by and through its attorneys, Bond, Schoeneck & King, PLLC, in support of its Motion to Dismiss the First Amended Complaint of Plaintiff Jane Doe ("Plaintiff") filed on February 21, 2025 (ECF Doc. No. 15) ("FAC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and the New York Civil Practice Law and Rules ("CPLR") § 217.

Plaintiff, an undergraduate student at FIT, was suspended for engaging in physical abuse and disruptive conduct, in violation of FIT's Code of Conduct. (*See* Exhibit 1 to FAC, Section VI.B). On February 1, 2024, FIT received a report that Plaintiff had assaulted an individual near campus. Plaintiff was placed on an interim suspension, which she had the opportunity to challenge on February 2, 2024, during a meeting with the Dean of Students, Corie A. McCallum, PhD. During this meeting, Plaintiff did not deny the basis for the interim suspension, but claimed it was an accident.

In accordance with FIT's Code of Conduct, FIT conducted an investigation of the incident, then referred the matter to the Student Conduct Council ("Council") to make findings of fact and a decision on sanctions. A hearing was held on February 29, 2024 and, based on testimony, documentary evidence, and video footage provided by Public Safety, the Council determined that Plaintiff deliberately struck the complainant with the intent to harm. The Council also found that Plaintiff's account of the incident, claiming it was an accident, did not match video footage of Plaintiff's interactions with the complainant. Moreover, at the hearing, Plaintiff admitted to the second charge of engaging in disruptive conduct. As a result, Plaintiff was suspended for one semester, which meant she was able to return to campus the Fall semester of 2024. Plaintiff appealed the Council's decision, and on March 26, 2024, FIT upheld the findings and sanction. The decision is final.

Nevertheless, Plaintiff brings this action nearly ten months later, challenging FIT's disciplinary proceedings and findings.  In doing so, Plaintiff mischaracterizes her conduct as "a harmless expression of speech," and claims that FIT engaged in discriminatory conduct by making biased and pre-determined assumptions about her guilt, deprived her of a fair and impartial disciplinary process, and failed to condemn the dissemination of antisemitic flyers and protests near FIT's campus. [FAC ¶¶ 3, 11-13].  In total, Plaintiff brings twelve causes of action against FIT for its decision to discipline Plaintiff for violations of the Code of Conduct: (1) discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. ("Title VI"); (2) discrimination under the New York Executive Law § 286, et seq. ("NYSHRL"); (3) discrimination under the  New York Civil Rights Law § 40, et seq. ("NYCRL");  (4) discrimination under the N.Y.C. Administrative Code § 8-107 ("NYCHRL"); (5) breach of contract; (6) violation of substantive and procedural due process under 42 U.S.C. § 1983 ("§ 1983"); (7) retaliation under Title VI; (8) retaliation under the NYSHRL; (9) retaliation under the NYCHRL; (10) retaliation under FIT's Code of Conduct; (11) intentional infliction of emotional distress ("IIED"); and (12) negligent infliction of emotional distress ("NIED").

Plaintiff's claims must be dismissed, as they challenge FIT's disciplinary and administrative determinations.  Such challenges may only be brought in a CPLR Article 78 proceeding.  The time for Plaintiff to commence an Article 78 proceeding expired in July 2024 -- four months after FIT's decision to suspend Plaintiff was upheld on appeal.  Accordingly, all of Plaintiff's claims are untimely.  Even if Plaintiff were able to pursue her claims in a plenary action (which she is improperly attempting to do), each of her claims must be dismissed based on numerous independent grounds, as further explained below.  Therefore, the First Amended Complaint, and each cause of action therein, must be dismissed.

## **RELEVANT FACTUAL ALLEGATIONS**

FIT is part of the State University of New York system and is a public university located in New York, New York. [FAC ¶ 16]. At the time that the incident giving rise to the Amended Complaint occurred, Plaintiff was enrolled as a full-time student at FIT. [*Id.* ¶ 15].

Plaintiff alleges that on February 1, 2024, she was off the FIT campus and walking to class at FIT when, in order to remain on the sidewalk, she was forced to pass by individuals handing out pro-Palestinian flyers. [*Id.* ¶¶ 2, 44]. Plaintiff alleges that she was handed a flyer that contained a QR code to sign a petition that claimed that the Jews of Israel are colonizing land that is not theirs, engaging in ethnic cleansing, and committing genocide in Gaza. [*Id.*]. Plaintiff alleges that, as an expression of her speech, she shoved the flyer back at the person who handed it to her, inadvertently jostling that person, who stumbled backward a couple of steps. [*Id.* ¶¶ 3, 46].

As a result of this incident, Plaintiff alleges she was the subject of threatening social media posts, and on February 1, 2024, she contacted FIT, expressing concerns for her safety. [*Id.* ¶¶ 5, 50]. Plaintiff alleges that FIT responded on February 2, 2024, informing her that the individual who handed her the flyer was not an FIT student, and that FIT was not affiliated with the social media outlets on which Plaintiff was threatened. [*Id.* ¶ 51].

On February 2, 2024, Plaintiff met with Dean McCallum and was informed that FIT was bringing disciplinary charges against her, based on allegations that she struck the individual who handed her the flyer on February 1, 2024. [*Id.* ¶ 55]. Plaintiff was also notified that she was being placed on interim suspension as of February 2, 2024. [*Id.* ¶ 57]. During this meeting, Plaintiff was given the opportunity to challenge the interim suspension; her only response was that any contact she may have had with the individual was accidental. [*Id.* ¶ 56]. Following the meeting with Dean McCallum, Plaintiff was provided with a written summary of the disciplinary charges against her ("Notice of Charge"). [*Id.* ¶ 58; *See* Notice of Charge(s), attached as "Exhibit A" to the Affidavit

of Corie McCallum ("McCallum Aff.")].[1]

The Notice of Charge states that FIT received a complaint from Public Safety regarding the February 1, 2024 incident, wherein Plaintiff allegedly walked past an individual not associated with FIT outside FIT's Pomerantz building on 27th Street and 7th Avenue, took a flyer from her hand, punched the individual and threw the flyer back at her. [*See* Exhibit A]. Plaintiff was notified that she was being charged with violating FIT's Code of Conduct, Section VI.B.i. Physical Abuse and Section VI.B.viii. Disruption. [*Id.*].

The Notice of Charge also confirmed the decision orally conveyed by Dean McCallum that Plaintiff was being placed on an interim suspension. Given that Plaintiff's only comment regarding the February 1 incident was that it was an accident, the Notice of Charge informed Plaintiff that the interim suspension would remain in place pending a hearing by the Student Conduct Council. [*Id.*]. Notwithstanding the fact that Plaintiff had an opportunity to defend her conduct during the meeting with Dean McCallum, Plaintiff alleges that FIT did not give Plaintiff an opportunity to petition for an immediate review of the interim suspension. [FAC ¶ 59].

On February 29, 2024, FIT's Student Conduct Council held a hearing on the matter. [*Id.* ¶ 61]. The Complaint alleges that during the hearing, Plaintiff was deprived of her due process rights to confront the complainant in person, as the complainant appeared virtually. [*Id.* ¶ 64]. In addition, absent any indication in the record of any consideration being given to the same, Plaintiff also speculates that FIT improperly relied on another FIT student's statements, notwithstanding that the student did not provide a written statement or appear as a witness at the hearing. [Id. ¶¶ 67-69].

---

[1] On a motion to dismiss, the Court may consider those facts alleged in the complaint, documents attached as an exhibit therefor or incorporated by reference ... and documents that are integral' to the plaintiff's claims, even if not explicitly incorporated by reference." *Metrosearch Recoveries, LLC v. City of New York*, No. 158027/2016, 2017 WL 4354790, at *2, n.1 (N.Y. Sup Ct. Oct. 2, 2017), aff'd as modified, 169 A.D.3d 512 (1st Dept. 2019).

By letter dated March 6, 2024, Plaintiff was advised of the findings of the Student Conduct Council hearing, which determined that Plaintiff was responsible for (i) disruptive behavior and (ii) physical abuse ("Decision Letter"). [*Id.* ¶ 73]; [*See* the Decision Letter, attached as Exhibit B to McCallum Aff.]. Plaintiff admitted to the charge of disruptive behavior at the hearing. [Exhibit B]. As for the charge of physical abuse, Plaintiff alleges that she testified at the hearing that any physical contact she had with the individual was accidental and that FIT improperly sided with the complainant. [FAC ¶ 73]. However, this testimony was contradicted by *video footage* of the incident provided by Public Safety, which showed Plaintiff deliberately hitting the other individual. [Exhibit B]. Based on this evidence, the Council found that it was more likely than not that the action was a forceful hit. [*Id.*].[2] The Council also found it unlikely that Plaintiff was remorseful for the action, as she refused to acknowledge that she struck the other individual. [Exhibit B]. Plaintiff was sanctioned with a seven-month suspension from the FIT (from March 2024 until the start of the Fall 2024 semester). [FAC ¶ 74].

On March 13, 2024, Plaintiff submitted an appeal of the suspension, citing (i) numerous procedural violations, including the failure to give Plaintiff an opportunity to immediately appeal the February 2, 2024 interim suspension; (ii) the disparate treatment of Jewish and non-Jewish FIT students; (iii) the disruption charge on its face did not apply to the events of February 1, 2024, because there was no allegation that there was any disruption of college activities; and (iv) FIT failed to honor contractual promises of commitment to restorative justice practices set forth in its Code of Conduct. [FAC ¶ 75].

On March 26, 2024, FIT denied Plaintiff's appeal ("Appeal Decision Letter"). [*Id.* ¶ 76; *See* Exhibit C to McCallum Aff.]. In the Appeal Denial Letter, the following determinations were

---

[2] FIT's Code of Student Conduct requires that all decisions by the Dean of Students and the Council be based on a "preponderance of evidence," which is a "more likely than not" standard. [*See* Exhibit 1 to FAC, Section VIII.H].

made in response to the issues raised on appeal:

- FIT provided all required measures for due process, Plaintiff was responsible for the February 1, 2024 incident, and no new substantive information had been provided on appeal to warrant overturning the Council's decision;

- The sanction for disruptive conduct was in line with the ultimate finding of responsibility for the underlying conduct;"

- Based on the documents and video footage related to the incident, it is clear that under the FIT's Code of Conduct's burden of proof standard, and the preponderance of the evidence, it was more likely than not that Plaintiff intentionally struck the complainant;

- Given the nature of the misconduct – a violent act against another in proximity of the campus – the decision of Dean McCallum to temporarily restrict Plaintiff from access to the campus pending a full review of the incident was justifiable, and Plaintiff was given notification by email on February 2, 2024, at 11:56 a.m., that a review of the incident would be forthcoming, to which Plaintiff agreed to meet the same day; and

- Based on the physical nature of the incident and the sensitive nature of the circumstances surrounding the interaction, restorative justice practices would not be adequate to negate the negative impacts of physical violence and the potential for further risks to the safety and security of the college community.

[*Id.*].

## **ARGUMENT**

## **STANDARD ON MOTION TO DISMISS**

FIT moves to dismiss the First Amended Complaint ("FAC"), and each cause of action therein, pursuant to FRCP Rule 12(b)(6) and CPLR § 217. To survive a motion to dismiss under FRCP Rule 12(b)(6), a complaint must contain sufficient factual matter, which accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible on its face, the factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, is inapplicable to legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id*. at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

On a motion to dismiss under FRCP Rule 12(b)(6), courts may consider documents attached to the complaint or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Even if not incorporated by reference, a document may be considered on a motion to dismiss if the complaint "relies heavily upon its terms and effect," which makes the document "integral" to the complaint. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) (*quoting DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). For the reasons discussed below, based on the pleadings and documents incorporated by reference or relied upon, Plaintiff fails to state any plausible claim for relief against FIT. Accordingly, the FAC should be dismissed.

## POINT I

### PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY CAN ONLY BE BROUGHT IN AN ARTICLE 78 PROCEEDING, WHICH IS NOW UNTIMELY

Plaintiff's claims must be dismissed because, despite their labels, they are challenging FIT's disciplinary and/or administrative determination, which can only be brought pursuant to an Article 78 proceeding. It is the substance of a claim, rather than its form, which determines the applicable law. *Foster v. City of New York*, 157 A.D.2d 516, 518 (1st Dept. 1990). "If the gravamen of a claim falls within the scope of Article 78, that claim must be brought as an Article 78 proceeding even if it was commenced under some other legal theory." *Nespoli v. Bd. of Trustees of the New York City Employees' Retirement System*, 2021 N.Y. Slip. Op. 31603(U), *2 (Sup. Ct., N.Y. Cty. 2017).

The gravamen of Plaintiff's claims, although framed as discrimination, retaliation, breach of contract, torts, and substantive and procedural claims, fundamentally arise from FIT's academic

and administrative decisions to suspend her.  In addition, the relief Plaintiff seeks in all her claims relate to FIT's administrative and/or disciplinary decisions, including (1) reversing the outcome, findings and sanctions, (2) expunging her disciplinary record, (3) removing any record of the findings and suspension, (4) issuing a correction regarding her disciplinary record, and incidental monetary damages. [FAC ¶¶113, 123, 130, 136, 155, 178, 185, 192, 199, 207, 218, 229]. Specifically, in her First, Second, Third and Fourth Causes of Action, Plaintiff alleges that FIT discriminated against her based on her national origin and religion by disciplining Plaintiff and failing to discipline others.  Similarly, in her Seventh, Eighth, Ninth, and Tenth Causes of Action, Plaintiff alleges that she complained to FIT about discrimination and harassment, and she was retaliated against by FIT when it issued sanctions on Plaintiff for violations of the Code of Conduct.  In the Fifth and Sixth Causes of Action, Plaintiff asserts that FIT breached its contractual obligation and due process obligations to provide a campus free of discrimination and harassment by disciplining Plaintiff and not disciplining others, and failing to follow its procedures for the disciplinary process.  In her Eleventh and Twelfth Causes of Action for intentional and negligent infliction of emotional distress, Plaintiff again challenges FIT's administrative decisions, alleging that the decision to suspend her negligently and/or intentionally caused her emotional distress.

Accordingly, all of Plaintiff's claims should have been brought in an Article 78 proceeding. "Where the allegedly discriminatory acts are directly related to the academic or disciplinary determinations made by defendants, or to the procedures followed in reaching those determinations, they must be brought in an Article 78 proceeding, rather than a plenary action." *Kickertz v. N.Y.U.*, 110 A.D.3d 268, 278 (1st Dept. 2013); *Jennings v. Teachers College*, 29 Misc. 3d 1236(A) (Sup. Ct., N.Y. Cty., Nov. 8, 2010) (Discrimination claims that challenge a university's or college's academic and administrative decisions in their capacity as trained educators and

administrators should be brought as an Article 78 proceeding and are governed by the four-month statute of limitations); *Padiyar v. Albert Einstein Coll. of Medicine of Yeshiva Univ.*, 73 A.D.3d 634, 635 (1st Dept. 2010) ("The instant plenary complaint, while couched in terms of unlawful discrimination and breach of contract, is in fact a challenge to a university's academic and administrative decisions and thus is barred by the four-month statute of limitations for a CPLR Article 78 proceeding, the appropriate vehicle for such a challenge"); *Chai v. N.Y.U.*, 1:23-CV-09192-MKV, 2024 U.S. Dist. LEXIS 160094, *18 (S.D.N.Y. Sept. 4, 2024) ("There is an extensive line of Second Circuit cases in which courts have dismissed claims where, although styled as breach of contract claims, a litigant brings claims based on an alleged failure of a university to follow internal policies and procedures"); *Duffy v. City of New York*, 452317/2020, 2021 WL 4076944, at *1 (Sup. Ct., N.Y. Cty. 2021) ("[W]hile plaintiff's claims are brought as a breach of an employment agreement and tortious interference...the gravamen of plaintiff's complaint seeks to review the HHC's administrative determination...[and] should have been brought as an Article 78 proceeding"); *Mirza v. College of Mount St. Vincent*, Index No. 805075/2024E, 2025 N.Y. Misc. LEXIS 1605, *45 (Sup. Ct., Bronx Cty. March 18, 2025) ("As for the first and fourth causes of action based in contract, the causes of action are dismissed as subsumed in the Article 78 proceeding").

It is well settled law that courts play only a limited role in reviewing the academic disciplinary and administrative decisions of universities. Indeed, the Court of Appeals has repeatedly held that "[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment" with respect to core academic concerns including student performance, examinations, graduation, and student grievances. *In re Susan M. v. New York Law School*, 16 N.Y.2d 241, 245 (1990*); see also Maas v. Cornell*

*University*, 94 N.Y.2d 87, 92 (1999) (Court of Appeals' case law reflects policy that courts should exercise "the utmost restraint" in reviewing administrative decisions of educational institutions). Instead, decisions of academic institutions are reviewable only to determine if they were arbitrary, capricious, or irrational, and only in a special proceeding pursuant to CPLR Article 78. *Maas*, 94 N.Y. 2d at 92. *See, e.g., Susan M*, 76 N.Y.2d at 246 (Article 78 challenge to expulsion for academic deficiency "limited to question of whether the challenged determination was arbitrary and capricious, irrational, made in bad faith, or contrary to Constitution or statute").

Furthermore, any request for conversion to an Article 78 proceeding must be denied as untimely. CPLR § 217. "A proceeding pursuant to CPLR Article 78 must be commenced within four months after the determination to be reviewed becomes final and binding on the petitioner." *Zherka v. Ramos*, 173 A.D.3d 746, 747 (2d Dept. 2019); *Doe v. Columbia Univ.*, No. 19-Civ-5357 (ER), 2020 U.S. Dist. LEXIS 56233, *8 (S.D.N.Y. March 31, 2021). On a motion to dismiss, a complaint may be dismissed as time-barred where the complaint clearly shows the claim is untimely. *Harris v. City of New York*, 186 F.3d 243, 250 (2d. Cir 1999). Plaintiff admits in her FAC that the decision to issue her an interim suspension was conveyed on February 2, 2024. [FAC ¶ 55]. Plaintiff also admits that she received Defendant's final appeal decision on March 26, 2024. [FAC ¶ 76]. It is now well beyond the four-month statute of limitations prescribed by CPLR Article 78, which would have expired on July 26, 2024. The instant action was filed on January 25, 2025, *more than ten months after* Defendant's final decision on Plaintiff's appeal. Plaintiff cannot justify her failure to timely initiate an Article 78 proceeding by claiming ignorance of her rights or by arguing that FIT failed to inform her of such a remedy because state actors are not required to provide notice of state-law remedies that are established by published, generally available state statutes and case law. *See Smalls v. New York City Employees' Ret. Sys. Nycers*, 2020 U.S. Dist.

LEXIS 168694, at *12-*14 (S.D.N.Y. Sept. 15, 2020) (*citing City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999)). Because Plaintiff failed to bring her claims pursuant to Article 78, they are now time-barred and must be dismissed as a matter of law. *See* CPLR § 217; *Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 102 n.6 (2d Cir. 1988) ("[Plaintiff] may be barred by [the statute of] limitations from presently proceeding pursuant to Article 78).

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VI FOR DISCRIMINATION OR HARASSMENT

Even if the FAC is not dismissed pursuant to Point I above, it must still be dismissed as it fails to state a claim pursuant to FRCP 12(b)(6). In the First Cause of Action, Plaintiff alleges discrimination under Title VI based on her Jewish identity. Title VI prohibits institutions that receive federal funding from discriminating against participants in their programs based on race, color, or national origin. *See* 42 U.S.C. § 2000d.

In the educational context, actionable discrimination includes an institution's "deliberate indifference" to known instances of student-on-student harassment that are "'severe, pervasive, and objectively offensive' and discriminatory in effect." *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 665-66 (2d Cir. 2012) (*quoting Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650-51 (1999)). A Title VI deliberate indifference claim requires a student to plead that: (1) she was subject to severe or pervasive harassment; (2) the harassment was motivated, at least in part, by her race, color, or national origin; (3) the institution had both actual knowledge of the harassment and the ability to exercise substantial control over the harassers; (4) the institution was deliberately indifferent to the harassment; and (5) the harassment deprived the student of educational benefits or opportunities to which she was otherwise entitled. *See Id.* Determining hostility in the educational context involves examining the totality of the circumstances, including the

frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating, or merely offensive, and whether it unreasonably interferes with the victim's academic performance. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff alleges that FIT failed to discipline students involved in unsanctioned antisemitic leafleting, rallies, and other acts, which resulted in a harassing environment. However, these actions cannot sustain a Title VI claim, as they are not on their face objectively threatening, but instead constitute pure speech on matters of public concern "relating to [a] matter of political, social, or other concern to the community," communicated in a manner reasonably calculated to contribute to an ongoing public debate of considerable political significance. *See Ctr. for Bio-Ethical Reform, Inc. v. Black*, 234 F. Supp. 3d 423, 430, 435 (W.D.N.Y. 2017) (finding photo murals with large, horrific images comparing abortion to historically-recognized genocides on a university campus was protected speech); *Landau v. Corp. of Haverford Coll.*, 24 Civ. 2044 (GAM), 2025 WL 35469, at *2 (E.D. Pa. Jan. 6, 2025) (describing student expression in support of the Palestinian cause as a "classic example" of activity protected by the First Amendment); *Univ. of Md. Students for Just. in Palestine*, 2024 WL 4361863, at *8 ("[s]tudent demonstrations on college campuses in protest of the status quo, invariably with significant First Amendment implications, have a relatively long history in this country"); *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (holding that student speech criticizing Israel and supporting Hamas "represents pure political speech and expressive conduct" that is "entitled to special protection under the First Amendment"); *Rodriguez v. Maricopa County Community College Dist.*, 605 F.3d 703, 710 (9th Cir. 2009) (speech on a matter of public concern, directed to the college community, will generally fail to constitute unlawful harassment).

Although Plaintiff asserts that threatening antisemitic rallies occurred on or near campus,

these are conclusory allegations without any factual basis demonstrating how these purported rallies posed a direct physical threat to Plaintiff.  In fact, Plaintiff does not allege that she attended these rallies, making it implausible for her to have been threatened by such events.  As for Plaintiff's allegation that FIT failed to respond to doxing by FIT students, Plaintiff admits that FIT responded to this complaint and explained to Plaintiff that FIT was not affiliated with the social media outlets on which she was allegedly threatened. [FAC ¶ 51]. Similarly, Plaintiff alleges in a conclusory fashion that FIT failed to sanction students who engaged in "antisemitic acts" in violation of the Code of Conduct but fails to identify who these FIT students are or the specific instances for which they were not sanctioned by FIT. *Assoko v. City of New York*, 539 F. Supp. 2d 728, 741 (S.D.N.Y. 2008) (conclusory allegations insufficient to sustain a Title VI claim).

Plaintiff also contends that she was deprived of the full benefit of educational opportunities at FIT due to her national origin. [FAC ¶ 100]. However, Plaintiff does not allege that she was prevented from attending classes or other programs due to purported antisemitic acts.  The sole reason Plaintiff alleges she was barred from accessing the FIT campus was her involvement in an assault, which was caught on video surveillance tape and conclusively established that Plaintiff violated FIT's Code of Conduct. Had Plaintiff not been found to have engaged in this conduct, she would not have been prohibited from participating in the full benefit of opportunities at FIT.

Plaintiff further alleges that she was subjected to discrimination by being suspended for expressing her discontent with a flyer provided to her near campus. [FAC ¶ 99]. However, as detailed in the FAC, Plaintiff was not disciplined for her speech, but for serious violations of the Code of Conduct's prohibition against physical abuse and disruptive behavior (which Plaintiff admitted she engaged in).  Despite Plaintiff's self-description that her actions were a "harmless expression of speech," the video footage reviewed by the Student Conduct Council substantiates

its finding that her behavior was a deliberate act of aggression. As Plaintiff fails to adequately allege discrimination or an objectively hostile environment, her Title VI claim must be dismissed.

**POINT III**

**PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NYSHRL, THE NYCRL OR THE NYCHRL FOR DISCRIMINATION OR HARASSMENT**

In Plaintiff's Second, Third and Fourth Causes of Action, Plaintiff claims she was discriminated against and/or harassed in violation of the NYSHRL, the NYCRL and the NYCHRL for her Jewish identity. Plaintiff cannot sustain a claim under any of these statutes. The NYSHRL prohibits educational institutions from permitting the harassment of any student based on religion or national origin. N.Y. Exec. Law § 296(4). A violation of Section 296(4) of the NYSHRL also creates liability under Sections 40-c and 40-d of the NYCRL. *See* N.Y. Civ. Rights Law §§ 40-c, 40-d; *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 398 (E.D.N.Y. 2017) ("Facts sufficient to sustain a cause of action under [Section 296 of the NYSHRL] will support a cause of action under section 40-c of the [NYCRL].") (*internal quotation marks omitted*). In analyzing NYSHRL claims, the Southern District applies the NYCHRL standard. *Burgess v. New Sch. Univ.*, 23-CV-4944 (JGK), 2024 U.S. Dist. LEXIS 163306, *42 (S.D.N.Y. Sept. 11, 2024). "To establish a discrimination claim under the NYCHRL [and NYSHRL], the plaintiff need only demonstrate that she has been treated less well than other [employees] because of [a protected characteristic]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2012). Specifically, with respect to disparate treatment claims, "[t]o prevail on liability, the plaintiff need only show differential treatment – that she is treated 'less well' – because of a discriminatory intent." *Id.* at 110 and n.7; *accord Szewczyk v. Saakian*, 774 F. App'x 37, 38 (2d Cir. 2019) (*summary order*). Thus, Plaintiff "bears the burden of showing that the conduct is caused by a discriminatory motive…She must show that she has been treated less well at least in part 'because of her

14

[protected characteristic].'" *Mihalik*, 715 F.3d at 110; *see also, Askin v. Dept. of Educ. of City of New York*, 110 A.D.3d 621, 622 (1st Dept. 2013) (dismissing discrimination claim under the NYCHRL where the plaintiff failed to adequately plead different treatment under circumstances giving rise to an inference of discrimination).

Here, Plaintiff cannot state a claim for discrimination under the NYSHRL, NYCRL or NYCHRL because she cannot point to any adverse action or less favorable treatment during the relevant time period *due to her national origin or religion*. Although Plaintiff states in a conclusory manner that she was treated less favorably than others who are not members of her protected groups, she fails to identify any FIT student or provide specific examples of FIT students who were treated more favorably than she was because they did not identify as Jewish. As detailed above, the sole reason for Plaintiff's suspension was FIT's finding that she violated the Code of Conduct's prohibitions on physical abuse and disruptive behavior. Similarly, Plaintiff's allegation that FIT's inaction has perpetuated the harassment of Plaintiff and other Jewish students is also conclusory, as Plaintiff fails to identify any specific FIT student and the activity in which they allegedly engaged that FIT failed to address. *See McKenzie v. Meridian Capital Group, LLC*, 35 A.D.3d 676, 677 (2d Dept. 2006) (dismissing a NYCHRL Section 8-107 claim where the plaintiff offered "only conclusory assertions [of discrimination] without factual support"). In fact, FIT has addressed every complaint made by Plaintiff and has at all times enforced the Code of Conduct evenhandedly with regard to FIT students and matters over which it had control. Plaintiff's claims must therefore be dismissed.

## POINT IV

### PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

In the Fifth Cause of Action, Plaintiff claims that FIT breached its express and implied contracts with Plaintiff. Plaintiff's breach of contract claim must be dismissed as a matter of law

because Plaintiff does not adequately plead the necessary elements. To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff; (3) defendant's breach; and (4) damages resulting from the breach. *See Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). To sustain a contract claim against a university, a student must point to a provision that guarantees certain specified services, not merely to a general statement of policy, or to statements of opinion or puffery. *Marbury v. Pace Univ. (In re Columbia Tuition Refund Action)*, 532 F. Supp. 3d 414, 421 (S.D.N.Y. 2021). Similarly, to recover on a breach of implied contract claim, a student must identify specifically designated and discrete promises. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Papelino v. Albany Coll. Of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). Where a plaintiff fails to plead each of these elements, the breach of contract claim must be dismissed. *See, e.g., Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 298 (S.D.N.Y. 1999) (dismissing breach of contract claim for failure to plead every essential element thereof).

Plaintiff fails to allege the existence of a contract between herself and FIT, either express or implied. Plaintiff only generally states that "a contractual relationship existed between FIT and Plaintiff by virtue of Plaintiff's enrollment at FIT and as defined by and through FIT's policies and procedures governing the student disciplinary system." [FAC ¶ 139]. Plaintiff further states that "[t]hrough the documents it publishes and provides to students, FIT makes express and implied contractual commitments to students involved in the disciplinary process and/or the investigation of potential violations of Policies." [FAC ¶ 140]. Plaintiff also states that "FIT breached its express and implied contracts with Plaintiff by failing to enforce the commitments reflected in its Policies to provide Plaintiff a campus free from discrimination and harassment." [FAC ¶ 147]. These general statements do not give rise to an express contract, nor are they specific promises sufficient

to create an implied contract. *See Novio v. N.Y. Acad. of Art*, 317 F. Supp. 3d 803, 812 (S.D.N.Y. 2018) (dismissing a breach of contract claim against a university to the extent that it was based on promises to "provide . . . an educational environment free of sex discrimination in all programs and activities" and to "provide . . . an educational environment free of sexual harassment"); *Ward v. N.Y.U.*, No. 99 Civ. 8733 (RCC), 2000 U.S. Dist. LEXIS 14067, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) (holding that "broad pronouncements" of an institution's "compliance with existing anti-discrimination laws" and promises of "equitable treatment of all students" "cannot form the basis for a breach of contract claim").

Instead, FIT's Code of Conduct describes discretionary actions that FIT *may take* regarding students who violate its policies, including: "any violation of an FIT policy may be subject to the disciplinary process" [Exhibit 1 to FAC at pg. 3]; "the college may employ interim protective measures, including but not limited to: suspension, class changes, meeting room changes, residential room changes, and restriction of interaction. The college reserves the right to take interim measures as appropriate" [*Id.* at 8]; "FIT may pursue enforcement of its own rules whether or not legal proceedings are initiated" [*Id.* at 9]; "Pending the hearing, the Dean may temporarily suspend the respondent if, in the Dean's determination, the respondent poses a substantial risk of self-harm or harm to others or take other protective interim measures as the Dean deems appropriate" [*Id.* at 11]; "While suspended, a respondent may be separated from their campus residence, class or classes, and/or college facilities or premises, and have their rights and privileges revoked for a specified period" [*Id.* at 17].

For similar reasons, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing also fails. Although implicit in every contract is a covenant of good faith and fair dealing "that neither party to the contract shall do anything which will have the effect of destroying

or injuring the right of the other party to receive the fruit of the contract," a claim based upon a

breach of a covenant of good faith and fair dealing requires a contractual obligation between the

parties. *Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 192 (E.D.N.Y.

2014) (*citations omitted*); *See Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022)

(dismissing a breach of implied covenant claim where no contractual obligation existed between

the parties). As Plaintiff does not sufficiently allege the existence of an express or implied contract

between herself and FIT, nor point to any written contractual agreement or any specific promises

contained in FIT's Code of Conduct for which Defendant allegedly breached the covenant of good

faith and fair dealing, her claim must be dismissed.

Even if a contract existed between Plaintiff and FIT, Plaintiff fails to identify any provision

in the Code of Conduct that mandates a specific sanction or entitles students such as Plaintiff to

remain on campus after engaging in an assault or disruptive behavior. Rather, as per the express

terms of the Code of Conduct, students are prohibited from engaging in physical abuse and

disruptive behavior, and any student who engages in prohibited conduct *may* be subject to FIT's

disciplinary process.

## POINT V

## PLAINTIFF FAILS TO STATE A CLAIM FOR DUE PROCESS UNDER § 1983

In the Sixth Cause of Action, Plaintiff claims that FIT violated her substantive and

procedural due process rights under 42 U.S.C. §1983. To state a claim under § 1983, a plaintiff

must allege: (1) that the conduct complained of was committed by a person acting under color of

state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured

by the Constitution or laws of the United States. *Dwyer v. Regan*, 777 F.2d 825, 828 (2d Cir.

1985).

Plaintiff asserts that she was not provided with timely and adequate notice of her interim

suspension and not afforded the opportunity to appeal the interim suspension. [FAC ¶ 160-161]. Plaintiff also alleges that during the Conduct Hearing, she was not allowed to confront the complainant in person, as the complainant appeared virtually. [*Id.* ¶¶ 164-165]. She also alleges that in making its decision, FIT relied on another FIT student's statements, but that the student improperly refused to provide a written statement or appear as a witness at the hearing. [*Id.* ¶¶ 166-169].

Plaintiff's due process claims fare no better than the other causes of action in the FAC. First, where there is an adequate post-deprivation remedy, there can be no Fourteenth Amendment violation to support a § 1983 claim. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (holding "there is no constitutional violation [and no available § 1983 action] when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty") (*emphasis in original*).  Plaintiff's due process claim fails as a matter of law because an Article 78 proceeding is an adequate post-deprivation remedy.  *Attallah v. N.Y. College of Osteopathic Med.*, 94 F. Supp. 3d 448, 455 (E.D.N.Y 2015), *aff'd.*, 643 F. App'x 7 (2d Cir. 2016); *see also Eldars v. State Univ. of N.Y.,* 2021 U.S. App. LEXIS 30213, at *11 (2d Cir. Oct. 8, 2021) ("the existence of Article 78 relief barred [plaintiff's] procedural due process claim").

Moreover, upon being notified of the interim suspension during the February 2, 2024 meeting, Dean McCallum invited Plaintiff to address the findings that led to the interim suspension. However, Plaintiff did not dispute the underlying conduct and merely said that it was an accident. [*See* McCallum Aff., Exhibit A].  As a result, Plaintiff was notified later that day that the interim suspension would remain in place pending a hearing by the Student Conduct Council.

With regard to the opportunity to confront the complainant, there is no requirement in the

Code of Conduct requiring in-person examination of witnesses, and Plaintiff had the opportunity

to cross-examine the complainant remotely.  Although Plaintiff speculates that FIT considered the

statements of another witness who was not present at the hearing, she fails to allege what

statements were relied upon and in fact admits that that alleged witness refused to provide a

statement.  [FAC ¶ 68]. Plaintiff's due process claims must therefore be dismissed.

<u>POINT VI</u>

**PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION**

In the Seventh, Eighth, Ninth and Tenth Causes of Action, Plaintiff alleges that she was

retaliated against in violation of Title VI, the NYSHRL, the NYCHRL and the FIT Code of

Conduct.  To state a Title VI retaliation claim, a plaintiff must allege: (1) plaintiff's participation

in protected activity known to the defendant; (2) an adverse action by defendant against the

plaintiff; and (3) a causal connection between the protected activity and the adverse action.

*Padmanabhan v. N.Y. Inst. of Tech.*, 18 Civ. 5284 (ER), 2019 U.S. Dist. LEXIS 162261, *14

(S.D.N.Y. Sept. 20, 2019). To state a claim of retaliation under the NYSHRL, a plaintiff must

plead that (1) she engaged in protected activity; (2) the defendant was aware of this activity; (3)

the defendant took adverse action against her; and (4) a causal connection exists between the

protected activity and the adverse action. *Cruz v. Seiu Local 32BJ*, 19 Civ. 11836, 2021 U.S. Dist.

LEXIS 152074, *16 (S.D.N.Y. Aug. 12, 2021); *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d

739, 739 (2d Dept. 2013). "To prevail on a retaliation claim under the NYCHRL, the plaintiff must

show that she took an action opposing the defendant's discrimination, . . . and that, as a result, the

defendant engaged in conduct that was reasonably likely to deter a person from engaging in such

action." *Id.*  FIT's Code of Conduct does not provide an independent basis for bringing a plenary

action for retaliation and must be dismissed as it lacks any legal basis.

Plaintiff has failed to state a valid claim for retaliation because she has not plausibly alleged

a causal connection between her allegedly protected activities and any adverse action. Plaintiff alleges she engaged in protected activity during the fall 2023 semester, on January 30, 2024, and February 1, 2024, and that FIT retaliated against her on February 2, 2024, by issuing an interim suspension. However, there are no plausible allegations suggesting that the interim suspension was motivated by retaliatory animus. Plaintiff acknowledges in the FAC that the interim suspension was issued due to a report that Plaintiff had engaged in physical assault, in violation of the Code of Conduct.  Plaintiff was subsequently suspended by the Student Conduct Council after a conduct hearing based on evidence presented at the hearing, and in particular, video footage showing that Plaintiff deliberately struck another individual.  Moreover, other than reporting feelings of anti-Israel harassment at FIT, seeing an SJP flyer on the first day of the new semester, and reporting that she was being harassed and doxed by unknown individuals, Plaintiff has not plausibly alleged that other FIT students that were identified and found to have engaged in the same conduct of striking another individual were treated differently.  *Delgado v. Triborough Bridge & Tunnel Auth*., 485 F.Supp.2d 453, 462 (S.D.N.Y. 2007) (dismissing retaliation claim where plaintiff insufficiently plead disproportionate treatment or retaliatory animus).  Plaintiff's retaliation claims must therefore be dismissed.

### POINT VII

### PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In the Eleventh and Twelfth Causes of Action, Plaintiff alleges claims against FIT for intentional and negligent infliction of emotional distress.

### A.     Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must allege: "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal

connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (*en banc*).

Plaintiff claims that FIT negligently caused her emotional distress by suspending her without notice and denying her request for immediate appeal of the suspension. However, as these alleged acts are inherently intentional, they cannot form the basis of an NIED claim.  *See Chai*, 2024 U.S. Dist. LEXIS 160094 at *35 ("As an initial matter, because the actions alleged here were intentional and deliberate and allegedly in their nature offensive, they are outside the ambit of actionable negligence").

Plaintiff further fails to allege a legally cognizable duty of care owed by FIT to Plaintiff. Notably, a duty of care must be "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 693 (2d Cir. 1996). Universities do not owe a special duty of care to students by virtue of the student-university relationship. *See Doe v. Syracuse Univ.*, 5:21-CV-977, 2024 U.S. Dist. LEXIS 137790, *12-*14 (N.D.N.Y. Aug. 2, 2024). Here, Plaintiff only alleges in a conclusory fashion that FIT owed her a duty of care but fails to identify the specific duty owed to her. *See Brown v. N.Y.U.*, 2020 N.Y. Misc. LEXIS 24279, *8 (Sup. Ct., Richmond Cty., March 31, 2020) (Plaintiff has failed to identify any specific duty owed to him by NYU or Defendant Shepard. Rather, as correctly argued by the Defendants, any duty that could exist in theory would derive from the quasi-contract between student and university, and thus would generally not be actionable in tort.").  Moreover, even if an independent duty existed, which it does not, Plaintiff failed to sufficiently allege that any mental injury was a direct, rather than consequential result of the alleged breach or that she was in any way physically endangered or caused to fear for her safety. *See Brown v. N.Y.U.*, Index No. 151025/2019, 2020

N.Y. Misc. LEXIS 24279, *8 (Sup. Ct., Richmond Cty., March 31, 2020) (emotional distress is not a direct result of alleged mishandling of the disciplinary process). As Plaintiff's NIED claim is based on FIT's suspension and alleged denial of appeal for the interim suspension, these acts do not directly result in emotional distress and certainly did not result in physical endangerment or cause Plaintiff to fear for her safety. As such, they cannot sustain an NEID claim.

Additionally, to establish a claim of NIED, Plaintiff must allege outrageous and extreme conduct, which she has failed to sufficiently allege. *Rhee-Karn v. Lask*, 15 Civ. 9946 (LAP), 2018 U.S. Dist. LEXIS 171319, *32 (S.D.N.Y. Sept. 30, 2018) ("To establish a claim for negligent infliction of emotional distress, plaintiff must allege conduct that 'was so outrageous and extreme as to support a claim for emotional distress,' which is the same standard used in intentional infliction of emotional distress cases."). A sustainable cause of action for NIED will only be found where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993). Plaintiff's allegation that FIT unfairly conducted its disciplinary process does not rise to the level of extreme and outrageous conduct required to substantiate an NIED claim. *See Brown*, 2020 N.Y. Misc. LEXIS 24279, *6 (unfairly conducted disciplinary process is not "so outrageous in character, and so extreme in degree"). Accordingly, Plaintiff's NIED claim must be dismissed.

### B.    Intentional Infliction of Emotional Distress

Nor has Plaintiff adequately alleged a claim of intentional infliction of emotional distress ("IIED"). Under New York law, a party claiming IIED must prove: (1) extreme and outrageous conduct; (2) intention to cause distress, or knowledge that the defendant's conduct would result in emotional distress; (3) severe emotional distress; and (4) a causal link between the defendant's

conduct and the plaintiff's distress. *Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995); *Brown*, 2020 N.Y. Misc. LEXIS 24279, at *6. The court may determine, as a threshold matter, that the conduct in question is not sufficiently outrageous to satisfy the first element of this standard. *See Gay*, 60 F.3d at 89. Similarly to the NIED claim, this IIED claim must be dismissed because Plaintiff fails to sufficiently plead extreme and outrageous conduct.

Plaintiff alleges that "[FIT's] suspension, without notice, shortly after Plaintiff complained to Defendant that it had not handled anti-Israel, antisemitic harassment properly in the prior semester, and reported to Defendant that she was fearful for her safety after being 'doxed,' harassed, and threatened, was extreme and outrageous conduct." [FAC ¶ 213]. As previously stated, an alleged unfair disciplinary process does not rise to the level of extreme and outrageous conduct required to sufficiently plead an IIED claim. *See Brown*, 2020 N.Y. Misc. LEXIS 24279, *6 ("this tort was intended for the most egregious behavior"). Even so, as admitted by Plaintiff, Defendant notified Plaintiff of the charges brought against her, a hearing was conducted on the matter, and she was given the opportunity to appeal. This process illustrates that Defendant's conduct was neither extreme nor outrageous, but rather in compliance with its published policies and procedures. Accordingly, Plaintiff's IIED claim fails and must be dismissed.

## CONCLUSION

Based on the foregoing, FIT respectfully requests that the Court grant its motion to dismiss Plaintiff's First Amended Complaint in its entirety; together with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         May 23, 2025

                                                            BOND, SCHOENECK & KING, PLLC

                                        By: _____ /s/ RKK _____
                                                Rebecca K. Kimura, Esq.
                                                Christopher Cruz-Sierra, Esq.
                                                *Attorneys for the Fashion Institute of Technology*
                                                600 Third Avenue, 22nd Floor
                                                New York, New York 10016-1915
                                                Email address:  rkimura@bsk.com
                                                Telephone:  646-253-2309

## <u>CERTIFICATION</u>

The undersigned, an attorney duly admitted to the bar of this Court, hereby certifies under the penalty of perjury that the foregoing Memorandum of Law contains 8041 words (excluding the Cover Page, Table of Contents, and Table of Authorities), and complies with Rule 7.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2025.

*/s/ RKK*
Rebecca K. Kimura, Esq.
