IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

      Plaintiff,

  v.                                        Case No. 1:25-cv-950-JPC

FASHION INSTITUTE OF TECHNOLOGY,

      Defendant.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR STAY PENDING APPEAL OF ORDER DENYING MOTION FOR
RECONSIDERATION OF UNOPPOSED RENEWED
MOTION TO PROCEED UNDER A PSEUDONYM

TABLE OF AUTHORITIES

*Carroll v. Trump*, 669 F. Supp. 3d 249 (S.D.N.Y. 2023) .............................................................. 14

*Doe v. City Univ. of New York,* No. 21 Civ. 9544 (NB), 2021 WL 5644642 (S.D.N.Y. Dec. 1, 2021) ........................................................................................................................................... 7

*Doe v. College of New Jersey ,* 997 F. 3d 489 (3rd Cir. 2021) ...................................................... 13

*Doe v. Intel Corp*, No. 24 Civ. 6117 (JPO), 2024 WL 4553985 (S.D.N.Y. Oct. 22, 2024) ........... 6

*Doe v. Massachusetts Institute of Technology ("Doe v. MIT")*, 46 F. 4th 61 (1st Cir. 2022) ........ 13

*Doe v. Mast*, 745 F.Supp.3d 399 (W.D. Va. 2024)) .................................................................... 13

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ................................................................................. 8

*EW v. New York Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003*)* ...................................................... 11

*Ferring B.V. v. Allergan, Inc.,* 343 F. Supp. 3d 284 (S.D.N.Y. 2018) ........................................... 4

*Hassoun v. Searls,* 968 F.3d 190 (2d Cir. 2020) ............................................................................ 4

*Hilton v. Braunskill*, 481 U.S. 770, 107 S. Ct. 2113, , 95 L. Ed. 2d 724 (1987) ............................ 4

*Jewish Press, Inc. v. Kingsborough Community College*, 201 A.D.3d 547 (2022) ...................... 15

*Medcenter Holdings Inc. v. Web MD Health Corp.,* 734 F. Supp. 3d 303 (S.D.N.Y. 2024) ......... 6

*Nken v. Holder,* 556 U.S. 418, 434, 129 S. Ct. 1749, 1761, 173 L. Ed. 2d 550 (2009) .................. 4

*Poe v. Lowe,* 756 F.Supp. 3d 537 (M.D. Tenn. 2024) ................................................................. 14

*Schoolcraft v. City of New York*, 298 F.R.D. 134 (S.D.N.Y. 2014) ............................................... 6

*Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185 (2d Cir. 2008) ............................................... 8

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.,* 175 F. Supp. 2d 573 (S.D.N.Y. 2001) ..................... 14

*Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012) .................................. 12

*U.S. S.E.C. v. Citigroup Global Markets Inc.,* 673 F.3d 158 (2nd Cir. 2012) ................................ 4

*United States v. Pilcher,* 950 F.3d 39 (2d Cir. 2020) ............................................................. 13, 14

*United States v. Romano*, 794 F. 3d 317 (2nd Cir. 2015) ............................................................ 11

*Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ................................. 10

## Table of Contents

INTRODUCTION…………………………………………………………………………………...3

STATEMENT OF FACTS .................................................................................................................. 3

ARGUMENT ....................................................................................................................................... 4

I.        Plaintiff Has Met The Standard for a Likelihood of Success on Appeal because there are Substantial Grounds for Disagreement with this Court's Denial of Plaintiff's Motion for Reconsideration........................................................................................................................... 4

        A.        The Court Denied the Motion for Reconsideration for Failure to Cite Overlooked Data, when the Plaintiff cited Overlooked Data…………………………………. 5

        B.        The Court Denied the Motion for Reconsideration On the Grounds that Zionist Death Threat Stickers Affixed Inside Defendant's Campus Buildings Are Not Directed At Persons "Similarly Situated" to Plaintiff, Zionist Student…………..6

        C.        The Court Denied the Motion for Reconsideration On the Grounds of Waived Prejudice to Defendant After the Court Invited Objections from a Counseled Defendant Who Stated In Writing That It Would Not Oppose Plaintiff's Motion to Proceed Under a Pseudonym……………………………………………….,.…..10

II.        Plaintiff Will be Irreparably Injured Absent a Stay ....................................................... 12

III.        Issuance of the Stay Will Not Substantially Injure the Defendant .............................. 14

IV.        The Public Interest Lies In Favor of Meaningful Appellate Review and Relief .......... 15

CONCLUSION................................................................................................................................. 15

## INTRODUCTION

Plaintiff, by her attorneys, National Jewish Advocacy Center, Inc., hereby respectfully submits this motion for a stay of all pleading, motion and other deadlines in this matter while Plaintiff's July 18, 2025 interlocutory appeal, Dkt. 45, of this Court's July 11, 2025 Order, Dkt. 44, denying her motion for reconsideration of denial of unopposed renewed motion to proceed under a pseudonym, is pending before the Second Circuit Court of Appeals.

## STATEMENT OF FACTS

Plaintiff refers the Court to Plaintiff's First Amended Complaint, Dkt. 15, for the complete recitation of facts underlying this litigation.

On February 4, 2025, this Court granted Plaintiff's motion to proceed under a pseudonym, prior to the entry of Defendant's appearance in this case. Dkt. 8 ("February Order"). On February 12, 2025, Plaintiff served this Court's order granting her motion to proceed under a pseudonym on Defendant FIT, Docket 23. On March 21, 2025, Defendant indicated to undersigned Plaintiff's counsel that it would not oppose plaintiff's renewed motion to proceed under a pseudonym. See Plaintiff's Renewed Unopposed Motion to Proceed Under a Pseudonym, Dkt. 20, 2. On April 3, 2025, the Court denied Plaintiff's unopposed renewed motion to proceed under a pseudonym. Dkt. 22 ("April Order"). On April 17, 2025, Plaintiff filed a motion for reconsideration of this Court's April 3, 2025 Order denying her unopposed renewed motion to proceed under a pseudonym. Dkt. 24, 25.

On July 11, 2025, this Court entered an Order denying Plaintiff's motion for reconsideration because Plaintiff failed to identify "controlling decisions or data that the court overlooked," and further ruled that if an amended complaint under Plaintiff's true name is not filed by July 18, 2025, or if that deadline is not extended, the Court will dismiss this action

3

without prejudice. Dkt. 44 ("July Order"). On July 18, 2025, Plaintiff filed a notice of interlocutory appeal of this Court's July 11, 2025 Order to the Second Circuit Court of Appeals. Dkt. 45.

## ARGUMENT

The factors regulating the issuance of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See Nken v. Holder,* 556 U.S. 418, 434, 129 S. Ct. 1749, 1761, 173 L. Ed. 2d 550 (2009)(vacating denial of stay and remanding); *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987) (same); *Hassoun v. Searls,* 968 F.3d 190, 195 (2d Cir. 2020)(reversing denial of stay pending appeal); *U.S. S.E.C. v. Citigroup Global Markets Inc.,* 673 F.3d 158 (2nd Cir. 2012)(same).

**I.    Plaintiff Has Met The Standard for a Likelihood of Success on Appeal Because there are Substantial Grounds for Disagreement with this Court's Denial of Plaintiff's Motion for Reconsideration of its Denial of her Unopposed Renewed Motion to Proceed under a Pseudonym.**

This Court has held that sufficient likelihood of success for a stay pending appeal was shown where there were "substantial grounds for disagreement." *See Ferring B.V. v. Allergan, Inc.,* 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018)(granting stay pending interlocutory appeal); *cf. Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 642 (S.D.N.Y. 2012)(staying discovery pending appeal, while declining to stay court's consideration of fully briefed motion, where appellant had "non-frivolous appeal" which raised "potentially substantial but hardly promising issues"). In this case, there are certainly, at a minimum, substantial grounds for disagreement.

4

      A.      **The Court Denied the Motion for Consideration for Failure to Cite Overlooked Data, when the Plaintiff cited Overlooked Data**

A motion for reconsideration is appropriate where" 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.' " A motion for reconsideration may also be granted to " 'correct a clear error or prevent manifest injustice *Peoples v. Fischer*, 898 F. Supp. 2d 618, 623 (S.D.N.Y. 2012)( Scheindlin, J. )(granting in part motion for reconsideration)(quotations omitted).

Plaintiff argued in its motion for reconsideration that recent stickers repeatedly affixed inside FIT's campus buildings stating that "The Only Good Zionist is a Dead Zionist" may have been overlooked by the Court in its April 3, 2025 Order ("April Order") denying Plaintiff's Unopposed Renewed Motion to Proceed Under a Pseudonym, because the Court did not reference the recent Zionist death threat stickers when it downgraded its February Order's finding that *Sealed Plaintiff* factors two and three, risk of retaliation and the severity of harm to plaintiff, from "weigh in her favor" to "only slightly in favor," in its April Order. *Compare* February Order, Dkt. 8, at 3 ("weigh in her favor") *with* April Order, Dkt. 22 at 5-6 ("weigh only slightly in favor").

In this Court's July Order denying Plaintiff's motion for reconsideration, the Court acknowledged that, "Plaintiff suggests that the Court overlooked evidence presented along with the renewed motion that a sticker bearing the phrase "The only good Zionist is a dead Zionist" had been affixed to at least two locations inside FIT buildings since early February 2023" [sic – should have read 2025]. Dkt. 44, at 3  This incorrect citation to the year 2023 rather than the

5

correct year 2025 is not insignificant; for it incorrectly changes the stickers from extremely recent, during the pendency of this motion to proceed under a pseudonym, to two years prior.

Although the July Order acknowledged that Plaintiff's motion for reconsideration suggested that the Court overlooked this evidence, later in the same opinion the Court wrote that Plaintiff failed to identify "data that the court overlooked," and denied it on these grounds. Dkt. 44, at 7. However, case law establishes that this sort of recent factual evidence is precisely the kind of overlooked "data" on the basis of which courts in this circuit have granted motions for reconsideration, as provided for in Local Rule 6.3. *See, eg., Medcenter Holdings Inc. v. Web MD Health Corp.*, 734 F. Supp. 3d 303, 309 (S.D.N.Y. 2024)(granting motion for reconsideration because the factual issue was a matter the court had "overlooked" in its earlier decision); *Schoolcraft v. City of New York*, 298 F.R.D. 134, 138 (S.D.N.Y. 2014)(granting motion for reconsideration based on overlooked facts).

### B. The Court Denied the Motion for Reconsideration On the Grounds that Zionist Death Threat Stickers Affixed Inside Defendant's Campus Buildings Are Not Directed At Persons "Similarly Situated" to Plaintiff, Zionist Student

The Court in its July Order characterized the "Only good Zionist is a Dead Zionist" stickers repeatedly affixed *inside* FIT's campus buildings[1] as "derogatory stickers," and held that "While Plaintiff's allegations of derogatory stickers being repeatedly affixed to buildings on FIT's campus and of violence against Jewish students elsewhere is "are abhorrent," these alleged actions were 'not directed at plaintiff or similarly situated individuals and so do not demonstrate that plaintiff is at risk of harm." July Order, Dkt. 44, at 3 (citing *Doe v. Intel Corp*, No. 24 Civ. 6117 (JPO), 2024 WL 4553985, at *4 (S.D.N.Y. Oct. 22, 2024)(alteration adopted

---

[1] FIT advertises that it restricts access to its campus buildings to students, staff and registered visitors. https://www.fitnyc.edu/about/policies/safety-security/campus-card-and-access.php. The fact that these Zionist death threat stickers were affixed by Plaintiff's fellow students, Defendant's staff, or registered visitors, further illustrates the risk of harm to Plaintiff.

6

and footnote omitted)(quoting *Doe v. City Univ. of New York,* No. 21 Civ. 9544 (NB), 2021 WL 5644642, at *3 n. 2 (S.D.N.Y. Dec. 1, 2021))]("Individuals are not "similarly situated simply because they belong to the same protected group.").

However, both this Court and the Court in *Doe v. Intel*, misread the highlighted quote from *Doe v. City Univ. of New York* ("*Doe v. CUNY*") and took it out of context. The Plaintiff in *Doe v. CUNY* sued when his college attendance was barred because he refused to get the COVID vaccine, because the vaccines were produced and/or tested using aborted human fetal cell lines. *Doe v. CUNY*, No. 21 CIV. 9544 (NRB), 2021 WL 5644642, at *1. Plaintiff moved to proceed under a pseudonym, citing the "shaming and blaming" of unvaccinated people, such as statements by President Biden expressing impatience and frustration with unvaccinated persons. *Id.* at *3.

The Court in *Doe v. CUNY* held that the second and third *Sealed Plaintiff* factors, which relate to the harm to plaintiff if he cannot proceed anonymously, cut strongly against him. *Id*. The Court held that "statements expressing a lack of patience or frustration at unvaccinated people do not support plaintiff's claim that he would be subject to extensive harassment "and perhaps even violent reprisals," and do not suffice to justify anonymity." *Id.* In the footnote to this sentence, cited by this Court in its July Order and the Court in *Doe v. Intel*, the Court in *Doe v. CUNY* wrote:

> Plaintiff also cites a Breitbart article regarding a guest on MSNBC commenting that anti-vaccination conspiracy theorist activists were "bioterrorists" and calling for "drone strikes." ECF No. 5 at 5. It appears that the guest's hyperbolic comments regarding "drone strikes" are addressed at those "worst offender podcasters," rather than individuals like plaintiff. ECF No. 5 at 5; Bleau, H., MSNBC Guest Calls for Drone Strikes on Americans Opposed to Vaccine Mandates, Breitbart (Sept. 10, 2021), https://www.breitbart.com/politics/2021/09/10/msnbc-guest-calls-drone-strikes-americans-opposed-vaccine-mandates/. While it is farcical to suggest that plaintiff would actually be subject to "drone strikes" if he was publicly identified in this lawsuit, the

7

> comment was not directed at plaintiff *or similarly situated individuals* and so does not demonstrate that plaintiff is at risk of harm.

*Doe v. City Univ. of New York,* No. 21 CIV. 9544 (NRB), 2021 WL 5644642, at *3 (S.D.N.Y. Dec. 1, 2021)(emphasis added).

Thus, the Plaintiff in *Doe v. CUNY* cited a media report of an MSNBC hyperbolic threat of drone strikes against the "worst offender [anti-vaccine] podcasters" as the basis of his fear of "perhaps even" violent reprisals if his motion to proceed under a pseudonym was denied - but the plaintiff in that case was not a podcaster at all, let alone a "worst offender" podcaster.

In contrast, Plaintiff herein, a Zionist student who Defendant suspended for allegedly deliberately assaulting an anti-Zionist leafleter, is similarly situated to those Zionists who are the subject of the Zionist death threat stickers affixed *inside* defendant's campus buildings. Unlike the hyperbolic and farcical nature of the MSNBC's guest's threats of drone strikes, the threats are neither hyperbolic nor farcical, as evidenced by actual assaults on New York campuses, including at Defendant FIT's campus.

The Zionist plaintiff in this case is similarly situated to the Zionists targets of opprobrium inside FIT's campus buildings, just like the targets of opprobrium who were allowed to proceed under a pseudonym in *Doe v. Stegall*, 653 F.2d 180, 182 (5th Cir. 1981), cited favorably by the Second Circuit in its ten-factor *Sealed Plaintiff* test for whether to grant a motion to proceed under a pseudonym. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 189 (2d Cir. 2008)("*see Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir. 1981) (discussing "the balance pitting privacy concerns against the presumption of openness of judicial proceedings").

In *Stegall*, the Plaintiff's sought to enjoin religious observances in the county's public schools and asked that they be permitted to proceed under fictitious names. 653 F.2d 180, 182

(5th Cir. 1981). The Plaintiff's offered local newspaper reports of public reaction to the lawsuit voiced at a school board meeting, which included, "The devil is here," Khhhhhh wife said. "He's doing everything he can through these people trying to get prayer out of our school. Christians must beat the evil out of these people." "We have got to band together and whop this evil thing," Khhhhhh said. "God says we can." "Amen," Rhhhhhh said. "Hallelujah." "The next thing you know the Jews and the atheists won't let us have a Christmas or Easter holiday," Khhhhhh said." 653 F.2d at 183 n. 6.

The Fifth Circuit held:

> Although they do not confess either illegal acts or purposes, the Does have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior. Evidence on the record indicates that the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a Rankin County community hostile to the viewpoint reflected in plaintiffs' complaint. See n.6, supra.

653 F.2d 180, 186 (5th Cir. 1981).

Moreover, characterizing the repeated and recently affixed "The Only Good Zionist is a Dead Zionist" stickers as "derogatory stickers" rather than the death threats ignores Second Circuit authority. The Second Circuit has recognized that the use of a passive voice does not transform a threat into a political statement. *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013):

> [Defendant] argues that a "close syntactical analysis" of his statements reveals that he used only the passive voice. He wrote variously that Judges Easterbrook, Bauer, and Posner "deserve to be killed"; that "[i]f they are allowed to get away with this by surviving, other Judges will act the same way"; and that "[t]hese Judges deserve to be made such an example of as to send a message to the entire judiciary: Obey the Constitution or die." Because he never explicitly wrote, "I will kill them," Turner claims, his words cannot reasonably have been interpreted as a threat. The dissent essentially concurs in this argument, contending that at least when an alleged threat constitutes a "public statement of advocacy" as opposed to a "personal communication[ ]," it "must be clearly in the form of a threat" to constitute a true threat for First Amendment purposes. (dissent at 433, 434).

9

> With respect, this comports neither with precedent nor with the protections afforded by the First Amendment. As we have said before, "rigid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render the statute powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." *Malik,* 16 F.3d at 50; *see also United States v. Shoulberg,* 895 F.2d 882, 886 (2d Cir.1990) (upholding a threat conviction against a First Amendment challenge due to an "*implied* ... use [of] violence" and "*overtones* of imminent *423 threat*" (emphases added)). *Malik,* moreover, is in full accord with the Supreme Court's recognition in *Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), that given the surrounding context, cross burnings may constitute unprotected threats of violence, *see id.* at 354, 357, 363, 123 S.Ct. 1536, despite the wholly *implicit* nature of the serious threat they convey.

*Id.* at 422–23.

In conclusion, it is difficult to imagine a scenario under Second Circuit authority where a plaintiff is more similarly situated to threats of serious harm than the Plaintiff student Zionist in this case, accused of harming an anti-Zionist, to the Zionists who are the target of recent and repeated Zionist death threat stickers adorning the inner halls of Defendant's campus.

### C. The Court Denied the Motion for Reconsideration On the Grounds of Waived Prejudice to Defendant After the Court Invited Objections from a Counseled Defendant Who Stated In Writing That It Would Not Oppose Plaintiff's Motion to Proceed Under a Pseudonym

In the July Order, the Court rejected Plaintiff's argument that FIT's "non-opposition to [the] motion to proceed under a pseudonym is evidence that [Plaintiff's] privacy concerns are substantial and recognized by [FIT]," because, in response to the Court's "invitation to voice objection," Defendant cited its allocation of limited time and resources" as the reason its counsel stated in writing that it would not oppose Plaintiff's motion to proceed under a pseudonym.  July Order, Dkt. 44, at 4 n.2.

10

However - perhaps due to Plaintiff's typographical error omitting quotation marks in a parenthetical - this part of the July Order does not appear to apprehend that Plaintiff's argument was quoting a holding within this Circuit, *EW v. New York Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003), that a Defendant's prior non-opposition to similar plaintiffs proceeding anonymously was evidence that the Defendant itself recognized the plaintiff's privacy concerns– even though in *EW*, as here, the Defendant changed its prior position and now opposed pseudonymity. *See EW,* 213 F.R.D. at 112 (E.D.N.Y. 2003*)("**[Defendant] has not raised similar objections in other actions**, but have permitted plaintiffs suing related to conditions allegedly contracted from contaminated blood to proceed anonymously. **Thus, plaintiff's privacy concerns appear to be substantial ones, <u>and long-recognized …. by [Defendant]</u>**.")(emphasis added).

Furthermore, in this Court's July Order, this Court distinguished the controlling Second Circuit authority cited by the Plaintiff, *United States v. Romano*, 794 F. 3d 317 (2nd Cir. 2015), where the Second Circuit found a knowing waiver, on the grounds that it was in the face of "not merely . . . silence but . . . a negative response on the record to a district court invitation to voice objection." 794 F.3d at 334 (alteration adopted; internal quotation marks and emphasis omitted). July Order, Dkt. 44, at 6.

However, this case falls squarely within the Second Circuit ruling in *Romano*, because it did not involve "silence," rather, this case involved a counseled party giving "a negative response," in writing, to a written invitation to voice objection to Plaintiff's renewed motion to proceed under a pseudonym. That the "invitation to voice objection" came from a party rather than the court is not a meaningful distinction to the knowing waiver analysis in *Romano*.

For a court to re-issue an "invitation to voice objection," after a counseled party already rsvp'd "no," in writing, to the same invitation from opposing counsel, would wreak havoc to the

11

judicial administration of justice. Judicial efficiency requires that parties be able to rely upon the written representations of counsel. Perhaps repeated "invitations to voice objections" are appropriate to determine whether a waiver is knowing in the case of *pro se* parties, but not here, where parties are represented by counsel, themselves officers of the court.

For all these reasons, Plaintiff has shown a likelihood of success on the merits, or at a minimum, that there are "substantial grounds for disagreement," and that it has a serious, non-frivolous appeal, satisfying the first factor for the Court's consideration of whether to grant the stay pending appeal.

## II.     Plaintiff Will be Irreparably Injured Absent a Stay

Even if this Court does not find that Plaintiff has demonstrated a likelihood of success on appeal, but merely serious or substantial issues going to the merits, it is still necessary to compare the parties' respective claimed harms that would flow from the grant or denial of a stay. *See Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012)(granting in part motion to stay).

The second factor for the Court's consideration on whether to grant a stay pending an interlocutory appeal, ie., whether the applicant will be irreparably injured absent a stay, overwhelming favors granting a stay pending resolution of the appeal in this case. It is well settled that the harm caused by revealing Plaintiff's identity in a motion to proceed under a pseudonym is immediate and irreparable. For example, in *Doe v. Massachusetts Institute of Technology ("Doe v. MIT")*, 46 F. 4th 61, 65-67 (1st Cir. 2022), the First Circuit emphasized that once a litigant's true name is revealed, the harm is irreversible, and appellate review after final judgment would provide no meaningful relief (*citing, inter alia*, *United States v. Pilcher,* 950 F.3d 39, 41 (2d Cir. 2020) *(per curiam)*). The court in *Doe v. MIT* noted that such denials are

12

effectively unreviewable without the collateral order doctrine. 46 F. 4th at 65 ("Once the litigant's true name is revealed on the public docket, the toothpaste is out of the tube and the media or other interested onlookers may take notice in a way that cannot be undone by an appellate decision down the road").

Similarly, the Third Circuit in *Doe v. College of New Jersey*, 997 F. 3d 489, 494 (3rd Cir. 2021), held that the denial of pseudonymity is an important issue separate from the merits and is effectively unreviewable after final judgment because the litigant's identity cannot be anonymized retroactively ("we cannot anonymize a litigant's already publicized identity with a new trial. That bell cannot be unrung.").

The rationale for granting such stays is rooted in the recognition that the harm caused by revealing a litigant's identity is immediate and irreparable. Courts have acknowledged that the public disclosure of a litigant's identity can result in significant harm, including at times retaliation and physical danger. *See Doe v. College of New Jersey,* 997 F.3d 489, 494 (2021); *Doe v. Mast*, 745 F.Supp.3d 399, 404-405 (W.D. Va. 2024))(risk of physical harm to the plaintiffs' relatives in Afghanistan justified allowing plaintiffs to proceed pseudonymously, highlighting the severe consequences of disclosure).

Courts have granted stays of orders denying pseudonymity to preserve the litigant's anonymity while an interlocutory appeal is pending. *See, eg., Doe v. MIT*, 46 F. 4th 61, 65 (1st Cir. 2022)(district court stayed case to facilitate plaintiff's anticipated appeal of the denial of motion to proceed under pseudonym); *Poe v. Lowe,* 756 F.Supp. 3d 537, 551 (M.D. Tenn. 2024)(court stayed order denying pseudonymity for 14 days to allow plaintiff to seek review, and the stay would remain in place if timely review was sought).

13

Here, Plaintiff cited vitriolic anger and threats of assault targeting her specifically as a Zionist student who allegedly assaulted an anti-Zionist, and general Zionist death threats affixed inside Defendant's campus buildings.  In the words of our sister circuit, the First Circuit,  once Plaintiff's true name is revealed, the harm is irreversible, and appellate review after final judgment would provide no meaningful relief; *see also United States v. Pilcher*, 950 F.3d 39, 41 (2d Cir. 2020)(whether plaintiff could proceed under a pseudonym is issue that "will be effectively unreviewable on appeal from final judgment").

### III.     Issuance of the Stay Will Not Substantially Injure the Defendant

The third factor for the Court's consideration on whether to grant a stay pending an interlocutory appeal, whether the issuance of the stay will substantially injure the defendant, also clearly favors granting a stay pending resolution of the interlocutory appeal.  Defendants generally have no interest in hurrying the resolution of lawsuits brought against them, but rather favor delay.  *See, eg., Carroll v. Trump,* 669 F. Supp. 3d 249, 256 (S.D.N.Y. 2023)( "It is difficult also to ignore the possibility that this latest eve-of-trial request for a postponement is a delay tactic"); *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 579 (S.D.N.Y. 2001)("This case has been pending for eight months, and most of that time has been essentially wasted due to defendants' dilatory tactics").

 Given the cognizable, irreparable harm to Plaintiff, and lack of harm to the Defendant of delayed resolution of this matter resulting from the stay, the balance of equities strongly favors the imposition of a stay pending resolution of the interlocutory appeal.

### IV. <u>The Public Interest Lies In Favor of Meaningful Appellate Review and Relief</u>

It is fundamental that the public has an interest in the meaningful administration of justice, as recognized by the line of appellate cases, including in the Second Circuit, holding that the denial of a motion to proceed under a pseudonym is subject to interlocutory appeal, *supra*.

Furthermore, the public has an interest in protecting the confidentiality of student records, as evidenced by enactment of the Family Educational Rights and Privacy Act (FERPA), which prohibits the release of "education records" to unauthorized persons. *See Jewish Press, Inc. v. Kingsborough Community College*, 201 A.D.3d 547, 549 (2022)(college had reasonable basis for finding that the student complaints could not be produced even if personally identifying information was redacted, as student complaints were detailed and redaction of personal identifiers would not prevent readers from deducing who the complainants were).

Accordingly, the public interest lies in favor of staying the proceedings in this Court pending the resolution of Plaintiff's interlocutory appeal to the Second Circuit.

### **CONCLUSION**

For the foregoing reasons, and any others that may be deemed just by the Court, Plaintiff respectfully requests that her motion for a stay of all proceedings pending resolution of her interlocutory appeal to the Second Circuit of this Court's July 2025 Order denying her motion for reconsideration of the denial of her Unopposed Renewed Motion to Proceed Under Pseudonym be granted in its entirety.

Dated: August 19, 2025

                                        Respectfully submitted,

                                        **National Jewish Advocacy Center, Inc.**
                                        *Attorneys for Plaintiff*


                              By: _____*/s/ Abra Siegel*_____
                                        Abra Siegel
                                        666 Harless Place
                                        West Hempstead, NY 11552
                                        (312) 487-1281
                                        abra@njaclaw.org